**LYDA CONSTRUCTORS, INC., Appellant,**

v.

**BUTLER MANUFACTURING COMPANY, Appellee.**

No. 04–01–00284–CV.

Court of Appeals of Texas, San Antonio.

March 12, 2003.

Nissa M. Sanders, Thomas H. Crofts, Jr., Michael J. Murray, Crofts & Callaway, P.C., Richard C. McSwain, Stanley W. Curry, Jr., Curry & Associates, P.C., San Antonio, for Appellant.

Andrew L. Kerr, Alex Huddleston, Jonathan S. Miles, Holland & Knight LLP, San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, PAUL W. GREEN, Justice, PHIL HARDBERGER, Chief Justice, Retired.[1]

## ON MOTION FOR REHEARING

Opinion by PAUL W. GREEN, Justice.

We grant Butler Manufacturing Company's motion for rehearing. The opinion and judgment issued June 26, 2002 are withdrawn and the following is substituted.

This is a dispute between a general contractor, Lyda Constructors, Inc., and a supplier, Butler Manufacturing Company, over project delay damages allegedly caused by Butler. We affirm the judgment of the trial court in part, and reverse and remand in part.

### BACKGROUND

In 1996, Lyda contracted with the Northside Independent School District to build Sandra Day O'Connor High School in Helotes, Texas. In December 1996, Lyda entered a subcontract with SAC Building Corporation to construct metal buildings for the project. This subcontract held SAC "liable for any damage in connection with its work." SAC eventually contracted with Butler to supply the necessary materials.

On January 22, 1997, representatives from Lyda, SAC, and Butler met to establish a time line and estimate supply delivery dates. From this meeting, a chart ("the matrix") was drafted reflecting the

---

1. Hardberger, C. J., retired, not participating.

dates discussed. Butler and SAC entered a supply contract, providing Butler's liability was limited to repair and replacement of products. The contract also absolved Butler of liability for any consequential delay damages. In March 1997, SAC was dissolved due to financial difficulties, and SAC's owners formed a new entity, ASC Metal Building Systems. ASC asked Butler to transfer the supply contract to it and asked Lyda to permit ASC to assume SAC's subcontract on the project.

Meanwhile, in April 1997, Lyda prepared a project schedule. Lyda claims the project schedule was based on the dates in the matrix; however, at the time the project schedule was created, Butler had already failed to comply with some of the delivery dates reflected in the matrix. In mid-April 1997, Butler agreed to continue its supply contract with ASC, and in late April 1997, Lyda signed a new subcontract with ASC, which related back to the original subcontract with SAC. Neither the matrix nor the project schedule was incorporated into the subcontract or supply contract.

During Butler's negotiations with ASC over its entry into the project, Butler expressed concern over ASC's ability to pay for the supplies delivered. Butler asked for a joint check agreement with Lyda so that payments to ASC for supplies delivered by Butler would be in checks payable jointly to ASC and Butler. Lyda claims Butler refused to deliver any more supplies until this joint check agreement was entered. Butler drafted a proposed joint check agreement, but it was rejected by Lyda because it did not bind Butler to the terms of the ASC/Lyda subcontract. On June 3, 1997, Butler requested a copy of the ASC/Lyda subcontract because, according to a representative from ASC, Butler wanted to know what terms it was being asked to abide by. A day later,

Lyda sent Butler a letter stating that Lyda would issue checks jointly to ASC and Butler and that:

> Butler Manufacturing is a material supplier and will abide by contract between ASC Metal Building Company and LYDA Constructors, Inc., to the extent of being a material supplier, but will not accept the conditions of the balance of the contract involving other suppliers, labor, etc.

Shortly after receiving the letter, Butler delivered a shipment of supplies. Butler's delivery invoice contained the same terms and conditions it had used in its contract with ASC that limited Butler's liability to repair and replacement.

When ASC failed to pay Butler for the delivered supplies, Butler filed suit against Lyda's surety, seeking the $209,288.74 owed by ASC. Lyda intervened, alleging Butler caused Lyda delay damages by failing to deliver the supplies timely and failing to deliver supplies complying with the project's design specifications. The trial court granted summary judgment to Butler on all of Lyda's claims. On appeal, Lyda challenges the summary judgment on its claims of breach of contract, breach of express warranty, fraud, and negligent misrepresentation against Butler.

## STANDARD OF REVIEW

■ We review a trial court's grant of summary judgment *de novo. Sasser v. Dantex Oil & Gas, Inc.,* 906 S.W.2d 599, 602 (Tex.App.-San Antonio 1995, writ denied). We uphold a summary judgment only if the record establishes there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether there is a disputed issue of material fact precluding summary judgment, evidence

favorable to the nonmovant is taken as true and every reasonable inference is indulged in favor of the nonmovant. *Nixon,* 690 S.W.2d at 548–49. When, as here, the order granting summary judgment fails to specify the grounds, we affirm on any meritorious ground advanced in the motion. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

## DISCUSSION

Lyda contends the June 4, 1997 joint check letter it sent to Butler, in addition to the parties' course of dealings, establishes a contract between Lyda and Butler. Lyda also contends the representations made by Butler regarding delivery dates, as reflected in the matrix, constitute express warranties, which are not governed by the limiting language of the Butler/ASC supply contract. In response, Butler reasserts its summary judgment grounds, arguing: (1) there is no evidence of an enforceable contract between itself and Lyda; (2) there can be no express warranty absent privity; and (3) the terms of the supply contract immunize Butler from liability for delay damages.

● **Lyda's Breach of Contract Claim**

Initially, we must determine whether there is evidence of an enforceable contract between Lyda and Butler. In making this determination, we look to the parties' communications and the acts and circumstances surrounding those communications. *Harris v. Balderas,* 27 S.W.3d 71, 77 (Tex.App.-San Antonio 2000, pet. denied). When ASC was substituted as the new subcontractor in place of SAC, Butler sent Lyda a proposed joint check agreement that was rejected because it contained no provision obligating Butler to abide by the Lyda/ASC subcontract. Lyda countered with the June 4, 1997 letter to Butler wherein it agreed to pay Butler and ASC by joint check, but it included a provision that Butler would abide by the Lyda/ASC subcontract to the extent of being a material supplier. There were no other communications between Butler and Lyda. Butler never responded to Lyda's letter, but shortly thereafter delivered supplies to the project pursuant to its contract with ASC, and its delivery invoice purported to limit its liability to repairs and replacement.

Lyda argues that its June 4 joint check letter constituted an offer, which was accepted by Butler by virtue of its performance, *i.e.,* delivering supplies after the letter was received. There is evidence Butler had refused to deliver supplies until Lyda agreed to issue joint checks, and Lyda says Butler's performance is evidence of Butler's agreement to the terms of the June 4 letter. But Butler's performance is also explained by its obligation to comply with the ASC contract, which remained in place regardless of the existence of a joint check agreement. Accordingly, Butler's performance amounts to no more than a scintilla of evidence to support an agreement to abide by the terms of the Lyda/ASC subcontract. Lyda has thus failed to raise a material fact issue to support its claim of breach of contract.

● **Lyda's Breach of Express Warranty Claim**

The trial court also granted summary judgment on Lyda's breach of express warranty claim. Lyda says Butler "represented that it would provide metal buildings and components that complied with the project plans and specifications." Kim Williams's affidavit states:

On January 22, 1997, representatives of Lyda, ASC, and Butler met at the Butler plant in San Marcos, Texas to finalize the details of the structural steel and to set firm dates by which ASC and Butler would complete shop drawings, detail drawings, building delivery and

erection.... Based on this [matrix] and other representations made by Butler, there was no doubt in my mind that Butler agreed to supply the pre-engineered metal buildings and components in accordance with the Project plans and specifications and the Project schedule. Accordingly, I prepared the Project schedule incorporating the dates identified in the matrix.... The dates of the April 8, 1997 Project schedule are derived from the January 22, 1997 matrix.

Lyda argues these representations, which concern the quality of goods and the timeliness of delivery, are express warranties that it relied on when contracting with ASC.

■ Butler contends that Lyda's complaints about Butler's untimely deliveries are actually breach of contract claims, relying on *Chilton Ins. Co. v. Pate & Pate Ent., Inc.,* 930 S.W.2d 877 (Tex.App.-San Antonio 1996, writ denied). In *Chilton,* we considered a general contractor's claim that the subcontractor's failure to timely complete the work constituted a breach of warranty:

> [T]he promise of timely performance is contractual and is not a warranty. The contract specifies that "[s]ubcontractor shall fully complete the Work by 500 working days, or as directed by Contractor from time to time." Failure to complete the job within the allotted time amounts to a breach of contract, if anything, but could not trigger breach of warranty liability.

*Id.* at 891. We also discussed the difference between a breach of contract and a breach of warranty claim:

> When a party fails to deliver as promised, a breach of contract occurs. Conversely, when a seller delivers non-conforming goods, it is a breach of warranty. Under the Uniform Commercial Code ("UCC"), breach of con-

tract damages are available for failure to perform, but not for delivery of non-conforming goods.

*Id.* at 892. We further noted:

> A contract term identifies what is being sold; warranties describe the attributes, suitability for a particular purpose, and ownership of what is sold. Accordingly, for purposes of determining the existence of a warranty, the focus of the examination must be on that which is sold. In the sale of goods, the question is whether the goods delivered pursuant to the contract are in conformance with the statement or representation of the character, quality or title of the goods promised at the time of sale. Similarly, in the sale of services, the question is whether the services received conform to the character and quality of the services as promised. In short, it is the character and quality of the end product of the contract for goods or services that determines whether there has been a breach of warranty.

*Id.* at 891.

We agree with Butler that Lyda's claim for breach of warranty due to Butler's failure to timely deliver supplies is actually a breach of contract claim. And since there is no evidence of a contract between Lyda and Butler, the failure to timely deliver claim must fail.

■ Lyda's claim for breach of warranty due to delivery of non-conforming goods must also fail due to the absence of a contract between Lyda and Butler. An express warranty is created when "[a]ny affirmation of fact or promise [is] made by the seller to the buyer which relates to the goods and becomes part of the *basis of the bargain.*" *American Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 436 (Tex.1997) (emphasis in original); Tex. Bus. & Comm. Code § 2.313(a)(1) (Vernon 1994).

Lyda contends that when it entered into the subcontract with ASC in April 1997 it relied on Butler's promises concerning delivery times and quality of goods that were made at the January 1997 meeting between Lyda, SAC and Butler. While Lyda may indeed have relied on those promises, Lyda was buying ASC's services; it was not buying Butler's goods. Accordingly, Butler's promises cannot be the basis of the bargain made between Lyda and ASC. There was no express warranty and the issue is overruled.

● **Lyda's Fraud & Negligent Misrepresentation Claims**

The trial court also granted summary judgment on Lyda's fraud and negligent misrepresentation claims. To prevail on a fraud claim, a plaintiff must demonstrate four elements: (1) a material misrepresentation; (2) made with knowledge of its falsity or made recklessly without knowledge of the truth; (3) made with the intent that the other party should act; and (4) that the other party acts in reliance on the misrepresentation and suffers injury. *Eagle Prop. Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex.1990). Butler contends summary judgment was proper because the evidence conclusively negated the reliance element of Lyda's fraud claim.

To prevail on a negligent misrepresentation claim, a plaintiff must demonstrate four elements: (1) a representation made in the course of business; (2) that the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care in communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991). Butler asserts the evidence conclusively negated the justifiable reliance and false information elements of Lyda's negligent

misrepresentation claim. Butler also asserts the claim is precluded by the "independent injury requirement" on the theory that Lyda's claimed injuries are benefit-of-the-bargain damages, which Butler says are not recoverable in a negligent misrepresentation claim.

The evidence and inferences viewed in the light most favorable to Lyda shows the following: In December 1996 Lyda contracted with SAC to furnish metal buildings for the Project and Butler became SAC's supplier. In January 1997, representatives of Lyda, SAC and Butler met to discuss the Project schedule and to estimate supply delivery dates. Lyda set up the meeting because it "was on a tight schedule to make sure they could complete it within their allotted time." At the meeting, Butler represented it had the facilities to deliver the specified "supplies" in a timely manner and that it "had the capability and manpower to deliver those buildings in a timely fashion in accordance with those commitments." In March 1997, SAC was dissolved due to financial difficulties and ASC was formed by SAC's former owners. In April 1997, Butler agreed to continue its supply contract with ASC and Lyda signed a new subcontract with ASC that conformed to SAC's original contract. Lyda relied on Butler's representations concerning timely delivery of conforming supplies when it entered into the contract with ASC. Butler failed to timely deliver the metal components and Lyda suffered delay damages as a result.

Butler says this evidence shows Lyda could not have relied on any representations by Butler when contracting with ASC because Lyda simply substituted ASC on the contract it had previously signed with SAC. The SAC contract predated the January 1997 meeting and, therefore, Butler argues, nothing said at the meeting would have been relied on as a

basis for entering into the new contract with ASC. Moreover, Butler says there was no "false information" supplied at that meeting because any statements made related to future conduct and were not existing facts. *See Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, writ denied).

 It is simply not true that the statements made by Butler at the January 1997 meeting could not have been relied on by Lyda when deciding to contract with ASC. When SAC dissolved, Lyda needed a new metal buildings subcontractor with the ability to perform. ASC presented itself to Lyda with Butler again signed up as the materials supplier. Lyda was not obligated to contract with ASC, but the evidence infers that Lyda considered Butler's recently represented ability to perform as an inducement to contracting with ASC. And Butler's representations were of its present ability to perform, not of its future performance.

 Finally, Butler contends it is not liable for the delay damages sought by Lyda because these are benefit-of-the-bargain damages which ASC agreed to assume and which are not, in any event, available on a claim of negligent misrepresentation. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663 (Tex.1998). Lyda, however, had no contract with Butler, *see supra,* and there was thus no bargain from which to benefit. Lyda's claim of delay damages against Butler is independent of any liability therefor that may have been assumed by ASC.

We hold there is more than a scintilla of evidence in the record to raise material fact issues on the elements of Lyda's fraud and negligent misrepresentation claims. The issue is sustained.

*Conclusion*

Because fact issues have been raised on Lyda's claims of fraud and negligent misrepresentation, we reverse the summary judgment as to these claims and remand the cause for further proceedings. The trial court's judgment is affirmed as to Lyda's claims of breach of contract and breach of express warranty.