STERLING CHEMICALS, INC., Appellant,

v.

TEXACO INC. and Texaco Development Corporation, Appellees.

No. 01–06–00111–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 8, 2007.

Melinda A. Davis, Charles R. Tuffley, Grotefeld & Denenberg, L.L.C., Bloomfield Hills, MI, William Powers, Jr., Austin, TX, Ben A. Donnell, Donnell, Abernethy & Kieschnick, Corpus Christi, for Appellant.

Gwendolyn Dawson, H. Victor Thomas, Reagan W. Simpson, Reginald Ross Smith, King & Spalding, LLP, Houston, TX, for Appellee.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

GEORGE C. HANKS, JR., Justice.

Appellant, Sterling Chemicals Inc. ("Sterling"), challenges the trial court's order granting a partial motion for summary judgment in favor of appellees, Texaco Inc. and Texaco Development Corporation (collectively "Texaco"), on the grounds that (1) the trial court erred in granting the motion on Texaco's claim for losses resulting from business interruption and (2) the economic loss rule applied by the trial court in its ruling does not apply to claims for negligent misrepresentation where there was no contractual relationship between Sterling and Texaco. We affirm.

### Factual and Procedural Background

This action arises from two disruptions in the supply of synthesis gas ("syngas") to Sterling's Texas City Plant. Syngas is used by Sterling as a raw material in the

production of acetic acid. Sterling contemplated a change in its technology for producing acetic acid that would require significantly more syngas than Sterling could economically produce in-house. To obtain the additional syngas, Sterling solicited proposals from various syngas suppliers.

Praxair Hydrogen Supply, Inc. ("PHS") submitted a proposal to Sterling to build and operate a facility, adjacent to Sterling's Texas City plant, to produce and supply the requisite amount of syngas. The proposal featured the use of Texaco's proprietary gasification technology to produce and supply the syngas to Sterling and contemplated that PHS would pay licensing fees to Texaco in order to use that technology.

Sterling alleges that the proposal touted Texaco's existing experience and described the successful worldwide use of Texaco's gasification technology. Sterling also alleges that the proposal made a number of representations regarding the reliability of Texaco's technology and the technical support that Texaco would provide for its technology.[1] Sterling alleges that the proposal represented the following: an anticipated 98% on-stream time; 99% normal on-stream performance by companies who were currently using the technology; the existence of a Texaco research facility primarily devoted to process research in support of the technology; and a staff of process engineers at Texaco who would be available to support the design, construction and operation of units utilizing Texaco's technology. Finally, Sterling alleges that there were at least two Texaco employees present during meetings to discuss the proposal between PHS and Sterling.

According to Sterling, these employees represented to Sterling that Texaco's technology was "newer and improved" and would not have the type of problems experienced by a rival licensee.

Sterling alleges that all of these representations, which it contends were not true, were either made by or approved by Texaco. Sterling further alleges that it relied on the representations when it signed the Product Supply Agreement with PHS for PHS's construction and operation of the syngas facility adjacent to Sterling's plant.

In the Product Supply Agreement, PHS agreed to design, construct, and operate a plant to provide Sterling with the requisite syngas. Article 7 of this agreement contains extensive provisions addressing the remedies available to Sterling in the event that PHS failed to deliver the requisite amount and quality of syngas to Sterling from its syngas plant. Pursuant to Article 11.2 of the agreement, neither PHS nor Sterling has liability to one another for any consequential, indirect, or special damages resulting from a party's breach of any obligations under the contract.

To operate the plant, PHS also entered into a License Agreement with Texaco to use Texaco's proprietary gasification technology for the production of the syngas. Under the terms of Section 8(a) of this agreement, PHS and Texaco agreed that, in no event, shall Texaco be liable under this agreement for loss of prospective profits or special or consequential losses, damages, and/or related expenses in connection with the performance of the syngas plant or any component thereof.

Two years later, the syngas cooler in one of the buildings constructed by PHS

---

1. Texaco argues that Sterling's petition did not contain alleged representations. Thus, Texaco argues that we should not consider these representations in reviewing the trial court's order. Assuming, without deciding, that Sterling's petition can be construed as seeking damages based on these representations, as shown below, the trial court did not err in granting in part Texaco's motion for summary judgment.

failed. This failure resulted in two disruptions in the syngas supply to Sterling. It also disrupted Sterling's production of acetic acid and destroyed Sterling's catalyst. Sterling alleges that the syngas cooler was approved by Texaco and is an integral part of Texaco's gasification technology.

Sterling sued Texaco and the syngas cooler's manufacturer. In that suit, Sterling asserted a claim against Texaco for negligent misrepresentation. Texaco filed a motion for summary judgment on Sterling's negligent misrepresentation claim on the ground that the claim was barred by the economic loss rule. The trial court signed an order granting the motion with respect to Sterling's claim for losses resulting from business interruptions, but denying the motion as to Sterling's claim for losses resulting from property damage.[2] On appeal, Sterling challenges the trial court's order.

### Standard of Review

■■■ To prevail on a summary judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. TEX.R. CIV. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). We may affirm a summary judgment only when the record shows that a movant has disproved at least one element of each of the plaintiff's claims or has established all of the elements of an affirmative defense as to each claim. *Am. Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). When, as in this case, a summary judgment does not specify the grounds on which the trial court granted

it, the reviewing court will affirm the judgment if any theory included in the motion is meritorious. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Summers v. Fort Crockett Hotel, Ltd.,* 902 S.W.2d 20, 25 (Tex.App.-Houston [1st Dist.] 1995, writ denied). However, a summary judgment must stand or fall on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 339–41 (Tex.1993).

### Economic Loss Rule

■■ In its motion for summary judgment, Texaco argues that Sterling's claim for negligent misrepresentation, by which it seeks damages for "business interruption" as a result of the failure of the syngas cooler, is barred by the economic loss rule. Texaco argues that this rule bars any claims for such damages because Sterling has failed to meet its burden of establishing that it suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim. We agree.

■■ Under the economic loss rule, if a plaintiff only seeks to recover for the loss or damage to the subject matter of a contract, he cannot maintain a tort action against a defendant. *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991). Simply stated, under the economic loss rule, a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim. *Trans–Gulf Corp. v. Performance Aircraft Servs., Inc.,* 82 S.W.3d 691, 695 (Tex.App.-Eastland 2002, no pet.).[3]

---

**2.** Sterling subsequently decided that it was not economically feasible to proceed to trial on the remaining property damage claim and requested that the trial court dismiss with prejudice the remaining property damage claim against Texaco and sever the other de-

fendants, so that this appeal could be pursued. The trial court granted this request.

**3.** The doctrine has been expressed and applied by Texas courts in two related, overlapping contexts. First, the doctrine has been applied to preclude tort claims brought to

Texas courts have applied the economic loss rule to preclude tort claims between parties who are not in contractual privity. *See, e.g., id.* at 694–95; *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 285–90 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Hou–Tex, Inc. v. Landmark Graphics,* 26 S.W.3d 103, 106–07 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Hininger v. Case Corp.,* 23 F.3d 124, 126–27 (5th Cir.1994). For example, in *Trans–Gulf Corp.,* the purchaser of an airplane brought claims against a contractor who had been hired by the airplane's seller, as well as a subcontractor hired by that contractor, to perform repair work. 82 S.W.3d at 693. The purchaser alleged that the contractors, with whom the purchaser had no contractual relationship, used improper sealant, and asserted negligence claims against them. *Id.* The court held that the purchaser's tort claims for economic losses against these "contractual strangers" were barred by the economic loss doctrine. *Id.* at 695.

Similarly, in *Hou–Tex, Inc.,* an oil and gas company contracted with a geological contractor to assist it in choosing a drilling site. 26 S.W.3d at 106–07. The contractor used defective computer software, resulting in the drilling of a dry well. *Id.* at 107. The oil and gas company sought to recover its economic losses against the software developer, with whom it had no contractual relationship, under a negligence theory. *Id.* The court, rejecting the argument that the software developer owed the oil and gas company a duty in tort, held that the economic loss doctrine precluded the oil and gas company's negligence claims against the software developer. *Id.*

Texas courts have specifically addressed the application of the economic loss rule to negligent misrepresentation claims. Under the economic loss rule, a plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim. *D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 664 (Tex.1998). The burden is on the plaintiff claiming negligent misrepresentation to provide evidence of this independent injury. *Id.* Texas courts have adopted the independent injury requirement of Section 552B of the Restatement (Second) of Torts for negligent misrepresentation claims. While benefit of the bargain damages are available for a breach of contract, under Section 552B, such damages are not recoverable for a negligent misrepresentation:

(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is legal cause, including:

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

(2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

recover economic losses when those losses are the subject matter of a contract. Second, the economic loss doctrine has been applied to preclude tort claims brought to recover economic losses against the manufacturer or seller of a defective product where the alleged

defect damages only the product and does not cause "personal injury" or damage to "other property." *See Pugh v. General Terrazzo Supplies, Inc.,* 243 S.W.3d 84 (Tex.App.-Houston [1st Dist.] 2007, no pet. h.).

RESTATEMENT (SECOND) OF TORTS § 552B (1977); *Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442–43 (Tex.1991). Accordingly, if a negligent misrepresentation claim only seeks benefit of the bargain damages, instead of those damages permitted for negligent misrepresentation, (1) a plaintiff cannot establish an independent injury that is distinct from the economic losses recoverable under a breach of contract claim and (2) the economic loss rule bars any recovery of these damages under the negligent misrepresentation claim. *D.S.A. Inc.,* 973 S.W.2d at 664.

■ Although the Texas Supreme Court has carved out a very limited exception to this rule to allow a plaintiff to bring a claim for fraudulent inducement to enter into a contract without a showing of an injury distinct from permissible contract damages, it has expressly disapproved of extending this exception to negligent misrepresentation claims. *Id.* at 663. While the benefit of the bargain measure of damages is available for both fraudulent inducement and breach of contract claims, it is not available for a claim of negligent misrepresentation. *Id.* Furthermore, as the Texas Supreme Court has held, "[r]epudiating the independent injury requirement for negligent misrepresentation claims would potentially convert every contract interpretation dispute into a negligent misrepresentation claim." *Id.* at 664.

■ In this case, in response to Texaco's motion for summary judgment, Sterling did not prove an independent injury as required under Section 552 of the Restatement. Sterling's claim against Texaco seeks the same measure of damages available for a breach of contract: the benefit of the bargain. The summary judgment evidence establishes that Sterling is (1) asserting that the business interruptions, as a result of the syngas cooler failure, caused it to lose profits from the sale of acetic acid to its buyers and (2) seeking to recover these monies as damages in this action against Texaco. These claimed lost profits and sales represent benefit of the bargain damages—monies Sterling would have received had it been timely provided with the syngas under the Product Supply Agreement with PHS. Contrary to Sterling's argument, lost sales and profits cannot constitute "reliance damages" available under Section 552 of the Restatement. Reliance damages are measured as the *out-of-pocket* expenditures made by one party in reliance on the actions of another party, not by the amount of lost profits and sales. *See Mistletoe Express Serv. v. Locke,* 762 S.W.2d 637, 638–39 (Tex.App.-Texarkana 1988, no writ); *see also* E.A. FARNSWORTH, CONTRACTS § 12.16, at 888–89 (1982) (noting as examples of reliance damages—in contrast to benefit of bargain damages—a party's expenditures for labor and materials and other costs of preparation and a purchaser's spending money or making commitments for advertising, acquiring premises and equipment, hiring employees, and the like.) In this case, lost profits and sales are the consequential losses as a result of the business interruptions in the timely supply of syngas by PHS and recovery for these losses is addressed by Sterling's supply agreement with PHS. Accordingly, we hold that Sterling is not entitled to any recovery of damages against Texaco under its negligent misrepresentation theory. *See D.S.A. Inc.,* 973 S.W.2d at 664.[4]

4. On appeal Sterling asserts that, as part of its business interruption damages claim, it is also seeking to recover its unspecified costs to purchase from third parties some of the syngas that it should have received from the PHS facility. Sterling argues that these costs are not benefit of the bargain damages but, rather, are "out of pocket" damages that are recoverable for Texaco's negligent misrepresentations. However, in its response to Texaco's motion for summary judgment, Sterling's theory of recovery for business interruption did not identify these costs or attempt any

Citing caselaw from several other states, Sterling nevertheless argues that we should recognize claims for negligent misrepresentation as an exception to the economic loss doctrine. In further support of this argument, Sterling cites several opinions from our sister courts that it argues "impliedly" recognize this exception. However, the Texas Supreme Court has *specifically* addressed this issue in *D.S.A. Inc. v. Hillsboro Independent School District,* and we decline to adopt an exception that the Texas Supreme Court has expressly held does not exist under Texas law.

Next, Sterling argues that, despite the Texas Supreme Court's ruling in *D.S.A. Inc. v. Hillsboro Independent School District,* we should not apply the economic loss rule to the facts of this case because there was no contractual privity between Sterling and Texaco. In support of this argument, Sterling notes that, under the facts present in *Southwestern Bell Telephone Company v. DeLanney,* 809 S.W.2d 493 (Tex.1991), where the Texas Supreme Court explains the rationale behind its adoption of the economic loss rule, there was privity of contract between the plaintiff and the defendant. Sterling also argues that we should follow one state court decision and three federal court decisions that it asserts rejected the application of the economic loss rule where there was no privity of contract between the parties. *Lyda Constructors, Inc. v. Butler Mfg. Co.* 103 S.W.3d 632, 639 (Tex.App.-San Antonio 2003, no pet.); *Juarez v. Chevron USA,*

*Inc.,* 911 F.Supp. 257, 260 (S.D.Tex.1995); *Jackson v. Dole Fresh Fruit Co.,* 921 F.Supp. 454, 458–59 (S.D.Tex.1996); *Elk Corp. of Tex. v. Valmet Sandy–Hill, Inc.,* 2000 WL 303637, 2000 U.S. Dist. Lexis 3586 (N.D.Tex.2000). However, this argument is contrary to the weight of Texas caselaw, including at least two cases from this Court, which hold that privity is not required for the economic loss rule to apply. *See Pugh,* 243 S.W.3d at 91; *Harris Packaging Corp. v. Baker Concrete Constr. Co.,* 982 S.W.2d 62, 67–68 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Texas state courts have consistently applied the economic loss rule to negligence claims between parties who were not in privity. *See e.g., Trans–Gulf Corp.,* 82 S.W.3d at 694–95; *Coastal Conduit,* 29 S.W.3d at 285–90; *Bass v. City of Dallas,* 34 S.W.3d 1, 8–9 (Tex.App.-Amarillo, 2000, no pet.); *Hou–Tex, Inc.,* 26 S.W.3d at 106–07; *Indelco, Inc. v. Hanson Indus. N. Am.-Grove Worldwide,* 967 S.W.2d 931, 932–33 (Tex. App.-Houston [14th Dist.] 1998, pet denied); *Dennis Jewelry Co. v. Sonitrol Mgmt. Corp.,* 2003 Tex.App. LEXIS 804, 2003 WL 179618, at *3 (Tex.App.-San Antonio 2003, no pet.); *see also Hininger,* 23 F.3d at 126–27; *Coffey v. Fort Wayne Pools, Inc.,* 24 F.Supp.2d 671, 687 (N.D.Tex.1998).[5] Furthermore, the application of the economic loss rule is particularly appropriate here, where permitting Sterling to sue Texaco for consequential damages for the failure of the syngas cooler would disrupt the risk allocations that Sterling bargained for in its contract with

---

distinction between alleged out of pocket damages and benefit of the bargain damages. Accordingly, for this additional reason Sterling failed to meet its burden of establishing an independent injury as required under section 552 of the Restatement. *See D.S.A. Inc.,* 973 S.W.2d at 664.

**5.** In its brief, Sterling attempts to distinguish *Hou–Tex,* 26 S.W.3d at 106–07 from this case

on the ground that *Hou–Tex* involved a negligence claim rather than a negligent misrepresentation claim. However, Sterling does not offer any persuasive authority as to why we should ignore Texas caselaw precedent regarding the applicability of the economic loss rule and treat negligent misrepresentation claims differently from negligence claims.

PHS and that PHS, in turn, contemplated in its contract with Texaco. *See Hou–Tex,* 26 S.W.3d at 106–07. Although Sterling may not have been in privity with Texaco, the economic losses claimed in this lawsuit were the subject matter of Sterling's product supply agreement with PHS, and the contract specifically addressed the issue of consequential damages from the disruption of the supply of syngas. *See id.* at 107 ("Permitting Hou–Tex to sue Landmark for economic losses would disrupt the risk allocations that Hou–Tex worked out in its contract with Saguro and the risk allocations in Landmark's beta agreement or licensee agreement with SeisVision's licensees."); *Hininger,* 23 F.3d at 127 ("Implicit in the [economic loss rule] is the policy judgment that in a commercial context the possibility of an inadequate recovery" does not "justify permitting a tort recovery that will allow a purchaser to reach back up the product and distribution chain, thereby disrupting the risk allocations that have been worked out in the transactions compromising that chain.")

In sum, although Sterling has pled a claim against Texaco for negligence, Sterling is actually seeking to recover for economic losses sustained by virtue of the failure of the subject of its contract with PHS—its lost sales and profits. Because the economic loss rule precludes such claims for damages in tort, the trial court did not err in granting Texaco's motion for summary judgment with respect to Sterling's claim for business interruption damages.

### Conclusion

Accordingly, we affirm the trial court's final judgment.