CCE, INC., Appellant

v.

**PBS & J CONSTRUCTION SERVICES, INC.; Post, Buckley, Schuh & Jernigan, Inc.; and Yu–Chun Su, P.E., Appellees.**

No. 01–09–00040–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 28, 2011.

---

Benton Thomas Wheatley, Michael A. Hatchell, Charles R. Watson and Christopher Benjamin Dove, for CCE, Inc.

Carleton A. Davis, for PBS & J Construction Services, Inc., Post, Buckley, Schuh & Jernigan, Inc., and Yu–Chun Su, P.E.

Panel consists of Justices JENNINGS and ALCALA.*

## MEMORANDUM OPINION

TERRY JENNINGS, Justice.

Appellant, CCE, Inc., challenges the trial court's rendition of summary judgment in favor of appellees, PBS & J Construction Services, Inc.; Post, Buckley, Schuh & Jernigan, Inc.; and Yu–Chen Su, P.E. (collectively "PBS & J"), on CCE's claims against PBS & J for negligent misrepresentation and breach of warranty. In two of its three issues, CCE contends that the trial court erred in rendering summary judgment against CCE (1) on its negligent-misrepresentation claim on the grounds that PBS & J made no affirmative misrepresentation of material fact and the economic-loss rule bars recovery of CCE's "benefit-of-the-bargain damages" and (2) on its breach-of-warranty claim on the grounds that PBS & J was "not in privity [of contract] with CCE" and PBS & J made no express representation to CCE about the quality or character of its services. Alternatively, in its third issue, CCE contends that it should now be allowed to raise a claim against PBS & J for equitable subrogation. In a styled "cross-appeal,"[1] PBS & J contends that the trial court erred in denying it summary judgment on CCE's negligent-misrepresentation claim on the ground that PBS & J did

---

* This case was originally submitted with oral argument to a panel consisting of Justices Jennings, Hanks, and Alcala. The Honorable George C. Hanks, Jr. left the Court on September 13, 2010 to become a United States Magistrate Judge. The case is, therefore, being decided by the two remaining justices. See TEX.R.APP. P. 41.1(b).

1. Although the parties refer to this as a "cross-appeal," this actually is an additional argument in support of the trial court's judgment. See Baker Hughes, Inc. v. Keco R. & D., Inc., 12 S.W.3d 1, 5–6 (Tex.1999).

not proximately cause CCE's alleged damages.

We affirm the trial court's judgment in part, reverse the trial court's judgment in part, and remand for further proceedings.

## Background

The critical facts are largely undisputed. The Texas Department of Transportation ("TxDOT") hired PBS & J to draft engineering plans and specifications for a new road, FM 2435, in Nacogdoches County (the "road project"). PBS & J devised the plans, including a "Storm Water Pollution Prevention Plan" (the "SW3P"), which was required by ·a general surface-water discharge permit (the "permit"), issued by the Texas Commission on Environmental Quality ("TCEQ"), for the road project to prevent pollution from wastewater discharges entering into nearby waterways in violation of the Clean Water Act.[2]

TxDOT awarded the construction contract for the road project to CCE, a general contractor. TxDOT's "Standard Specifications for Construction of Highways, Streets and Bridges" generally requires that all work performed by a contractor on a TxDOT project must be in conformity with TxDOT plans, unless a deviation is approved by the TxDOT engineer responsible for the project. CCE alleged that it was contractually bound to configure erosion control measures for the road project in compliance with the SW3P designed by PBS & J and that it, in fact, complied with the SW3P.

TxDOT, on December 22, 2004, notified CCE that silt had discharged from the road project and accumulated on nearby private property, and TxDOT instructed CCE to suspend work on the road project

until "all erosion control measures [were] in place." On January 7, 2005, TxDOT expressed to CCE that it believed that the erosion and "siltation" problems arose from CCE's "failure to provide the control measures required by the plans." And TxDOT notified CCE that it had ten days to correct the alleged contract violations, or CCE would be considered in default under the construction contract. On January 18, 2005, TxDOT declared CCE in default, ordered CCE to cease work, and notified CCE's surety that it was obligated to arrange for completion of the road project.

CCE then hired Longview Road and Bridge, Ltd. ("LR & B") to complete the road project. In its summary-judgment evidence, CCE included the affidavit of its Financial Control Officer, Phil Mahar, who testified that hiring LR & B to complete the road project caused CCE to spend $2,423,752.20 more than it would have had it been able to complete the project on its own.

In its Fifth Amended Original Petition, CCE, in regard to its negligent misrepresentation claim, alleged that PBS & J "recklessly" or "without reasonable care" submitted the SW3P to TxDOT knowing that construction contractors like CCE would bid on and attempt to build the road project in reliance on the SW3P. CCE further alleged that the SW3P "contained numerous false statements of material existing fact including, but not limited to, the representation[s] that it was an instrument of service resulting from an engineering process when it was not, that it complied with the [p]ermit and [TxDOT] [g]uidelines, and that if CCE followed it, the [engineering] [p]lans and SW3P would work." In regard to its breach-of-warran-

---

**2.** See generally 33 U.S.C. § 1342 (allowing states to administer permits under Clean Wa-        ter Act).

ty claim, CCE alleged that PBS & J "provided express and written warranties and represented that its [p]lans and SW3P conformed to the [p]ermit and [g]uidelines, when they did not." CCE further alleged that PBS & J represented that the engineering plans and the SW3P "were instruments of services resulting from an engineering process, when they were not"; PBS & J "admitted that it expressly warranted and represented that if CCE followed the [p]lans and SW3P, they would work; and the plans and SW3P did not "conform with the [p]ermit and [g]uidelines and the SW3P did not work." CCE did not assert a claim for equitable subrogation against PBS & J.

In its first summary-judgment motion, PBS & J argued that it· was entitled to judgment as a matter of law on CCE's negligent-misrepresentation claim because "PBS & J's alleged misconduct was not the cause in fact of CCE's alleged injuries," "CCE's alleged injuries [were] not a forseeable result of PBS & J's alleged misconduct," and PBS & J did not·cause the termination of CCE's construction contract and its alleged damages. The trial court denied PBS & J's motion.

In a second summary-judgment motion and a supplemental summary-judgment motion, PBS & J contended that it was entitled to summary judgment as a matter of law and on no-evidence grounds. In regard to CCE's negligent-misrepresentation claim, PBS & J asserted that there is no evidence that it made an affirmative misrepresentation of material fact to CCE and, as a matter of law, the economic-loss rule bars recovery of CCE's damages and CCE may not recover "benefit-of-the-bargain damages" on its negligence claim. In regard to CCE's breach-of-warranty claim, PBS & J argued that because PBS & J did not sell services to CCE, it was "not in privity with CCE." PBS & J also asserted that it had made no express representation to CCE about the quality or character of any of its services.

The trial court rendered summary judgment for PBS & J on all grounds asserted in its second and supplemental summary-judgment motions. PBS & J then moved to dismiss its remaining counterclaim, and the trial court signed a final judgment from which CCE appeals.

## Standard of Review

To prevail on a summary-judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. Tex.R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in its favor. *Id.* at 549.

To prevail on a no-evidence summary-judgment motion, a movant must allege that there is no evidence of an essential element of the adverse party's cause of action or affirmative defense. Tex.R. Civ. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex.2004). We review a no-evidence summary judgment under the same legal-sufficiency

standard used to review a directed verdict. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.). Although the nonmoving party is not required to marshal its proof, it must present evidence that raises a genuine issue of material fact on each of the challenged elements. Tex.R. Civ. P. 166a(i); *see Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004). A no-evidence summary judgment motion may not be granted if the nonmovant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *See Ridgway,* 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). When reviewing a no-evidence summary-judgment motion, we assume that all evidence favorable to the nonmovant is true and indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *Spradlin v. State,* 100 S.W.3d 372, 377 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

### Negligent Misrepresentation

In its first issue, CCE argues that the trial court erred in rendering summary judgment in favor of PBS & J on CCE's negligent-misrepresentation claim because (1) PBS & J, in "the contents of the SW3P and the seal required to make it effective," made affirmative misrepresentations of material fact and (2) CC E is not seeking to recover "benefit-of-the-bargain damages," but rather "out-of-pocket" and consequential damages, which are not barred under the economic-loss rule. PBS & J, in its styled "cross appeal," argues that the trial court erred in denying its first summary-judgment motion on CCE's negligent-misrepresentation claim because PBS & J did not proximately cause CCE's alleged damages.

Texas has long recognized a cause of action for the tort of negligent misrepresentation, or negligently supplying information for the guidance of others, in which a plaintiff must prove that:

(1) a defendant, in the course of its business or in a transaction in which it had a pecuniary interest, made a representation,

(2) the defendant supplied "false information" for the guidance of another in the other's business,

(3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

(4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*See Fed. Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (citing Restatement (Second) of Torts § 552(1) (1977)). The supplier of such false information is liable for the loss suffered by those for "whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it" and "through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." *Id.* at § 552(2).

### *Misrepresentation of material fact*

█ PBS & J argues that CCE "cannot show that PBS & J made any actual affirmative representations in the SW3P of any existing fact" because, "[a]t best" CCE has only "inferences and references to other documents to piece together what can only amount to implied professional opinions about the anticipated performance of a plan that would be used, throughout an

extensive construction project, to reduce pollution leaving the site." In support of its argument, PBS & J characterizes CCE's primary allegation as PBS & J having "made an affirmative representation that the SW3P would *prevent* any pollutants from leaving the site." (Emphasis added.) This, however, is not the gist of CCE's allegations. Rather, the gist of CCE's allegations is that PBS & J, in its plans, supplied CC E with false information and did not exercise reasonable care in obtaining or communicating the information contained within the plans.

CCE presented summary-judgment evidence that PBS & J represented that its engineering plans complied with the TCEQ's surface-water discharge permit, which required, in part, the following:

> [T]he SW3P must describe and ensure the implementation of practices that will be used to reduce the pollutants in storm water discharges associated with construction activity at the construction site *and assure compliance with the terms and conditions of this permit.*

(Emphasis added.) Also, PBS & J's engineering plans contain a statement that a "copy of the Construction General Permit is a part of the SW3P," and the plans bear the engineer's seal of Dr. Yu–Chun Su. *See* 22 TEX. ADMIN. CODE § 137.33(a), (b) (2010) (Tex. Bd. of Prof'l Eng'rs, Sealing Procedures). Section 137.33 provides:

> (a) The purpose of the engineer's seal is *to assure the user of the engineering product* that the work has been performed or directly supervised by the professional engineer named and to delineate the scope of the engineer's work. (b) License holders shall only seal work done by them, performed under their direct supervision as defined in § 131.81 of this title, relating to Definitions, or shall be standards or general guideline specifications that they have reviewed

and selected. *Upon sealing, engineers take full professional responsibility for that work.*

*Id.* (emphasis added).

CCE also presented summary-judgment evidence that the SW3P was not sufficient and did not comply with the permit and generally accepted engineering practices and standards. CCE's engineering expert, David C. Riddle, in his report, stated:

> As a result of my evaluation of the materials made available to me, I have determined that PBS & J, in the performance of design services associated with the preparation of the Storm Water Pollution Prevention Plan (SW3P) for the construction of FM 2435 in Nacogdoches County, Texas did not comply with accepted professional engineering standards, with generally accepted engineering standards and procedures, with generally accepted standards for the preparation of SW3P's for construction sites, with the duty to protect the property and welfare of the public, with the requirements of the TCEQ General Permit TXR150000, and with the requirements of the U.S. Army Corps of Engineer Nationwide Permit 14.... for impacts to Waters of the U.S. relative to the following:
>
> 1. Failure to include elements on the SW3P site map that are required by the TPDES General Permit.
>
> 2. Failure to include elements in the SW3P that are required by the TPDES General Permit.
>
> 3. Failure to address stabilization requirements in the SW3P that would serve to minimize erosion during construction activities, as required by the TPDES General Permit.
>
> 4. Failure to include water quality Best Management Practices re-

quired by U.S. Army Corps of Engineers permits for areas that were covered by Corps permits or for other receiving bodies of water potentially affected by construction activities.

5. Failure to specify proper best management practices for the site conditions which should have been expected during construction activities.

Riddle also opined that PBS & J, in the SW3P, omitted important mapping information, omitted planning measures, provided no guidance on removal of existing vegetation, and omitted water-quality measures. He also opined that the SW3P contained poor engineering practices. From this evidence, a reasonable fact-finder could infer that PBS & J did not properly perform the work necessary to properly obtain the permit and begin construction of the road project. And, as noted above, the purpose of the engineer's seal on the engineering plans was "*to assure the user of the engineering product* that the work has been performed." *See* 22 Tex. Admin. Code § 137.33(a) (2010).

To the extent that PBS & J argues that its engineering plans are "not actionable because they are merely expressions of PBS & J's professional opinion," we are not aware of any authority standing for a general proposition that a professional engineer's plans cannot constitute a representation or contain false information. As noted by CCE, the Restatement contemplates just such a situation:

> The City of A is about to ask for bids for work on a sewer tunnel. It hires B Company, a firm of engineers, to make boring tests and provide a report showing the rock and soil conditions to be encountered. It notifies B Company that the report will be made available to bidders as a basis for their bids and that it is expected to be used by the successful bidder in doing the work. Without knowing the identity of any of the contractors bidding on the work, B Company negligently prepares and delivers to the City an inaccurate report, containing false and misleading information. On the basis of the report C makes a successful bid, and also on the basis of the report D, a subcontractor, contracts with C to do a part of the work. By reason of the inaccuracy of the report, C and D suffer pecuniary loss in performing their contracts. B Company is subject to liability to C and D.

Restatement (Second) of Torts § 552 cmt. h, illus. 9 (1977).

Taking CCE's evidence as true, as we must in a summary-judgment review, and indulging every reasonable inference in favor of CCE and resolving any doubts in its favor, we conclude that CCE presented more than a scintilla of evidence that PBS & J made affirmative misrepresentations of material fact. Accordingly, we hold that the trial court erred in rendering summary judgment for PBS & J on the ground that there is no evidence that PBS & J made an affirmative misrepresentation of material fact.

### Damages

■ PBS & J argues that CCE may not recover damages on its negligent-misrepresentation claim because CCE, in effect, is seeking to recover its "lost profits" or "benefit-of-the-bargain" damages. PBS & J asserts that the "economic loss rule prevents" CCE "from recovering what are essentially contract damages under a tort theory of liability." *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

■ As noted by the Texas Supreme Court, "damages recoverable for a negligent misrepresentation are those neces-

sary to compensate the plaintiff for *the pecuniary loss to him of which the misrepresentation is a legal cause,*" including

(a) The difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) *pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.*

*Sloane,* 825 S.W.2d at 442 (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 552B (1977)); *see D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663–64 (Tex.1998) (discussing *Sloane*'s adoption of section 552B). The damages recoverable for a negligent misrepresentation do not include the benefit of the bargain of a plaintiff's contract with a defendant. *Sloane,* 825 S.W.2d at 442 (quoting RESTATEMENT (SECOND) OF TORTS § 552B (1977)). Rather, "[u]nder the economic loss rule, a plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *See Sterling Chems., Inc. v. Texaco, Inc.,* 259 S.W.3d 793, 797 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (citing *D.S.A., Inc.,* 973 S.W.2d at 664).

Moreover, this Court has held that benefit-of-the-bargain damages are not recoverable for negligent misrepresentation even when there is no privity of contract between the plaintiff and the defendant. *See Sterling Chems., Inc.,* 259 S.W.3d at 796–98. In *Sterling,* a chemical manufacturer, Sterling, contracted with a construction firm to, using proprietary gasification technology owned by Texaco, build a facility to produce synthetic gas. 259 S.W.3d at 795. Sterling alleged that it, in entering the contract with the construction firm, relied upon representations made by Texaco

about its technology, even though Texaco was not a party to the contract. *Id.* When the completed facility did not produce synthetic gas as anticipated, Sterling sued Texaco for negligent misrepresentation, seeking damages for its "lost sales and profits." *Id.* at 796, 798. This Court, applying the economic-loss rule, affirmed the trial court's summary judgment in favor of Texaco. *Id.* at 800.

■ Under the economic-loss rule, a duty in tort does not lie when the only injury claimed is one for economic damage recoverable under a breach-of-contract claim. *Id.* at 796. Accordingly, when a plaintiff seeks to recover for only the loss or damage to the subject matter of a contract, the plaintiff cannot maintain a tort action against the defendant. *Id.* at 796–98 (citing *DeLanney,* 809 S.W.2d at 494). Because Sterling's claims for "lost sales and profits" were for its "benefit-of-the-bargain" of its contract with the construction firm, we held that Sterling could not recover damages from Texaco for negligent misrepresentation. *Id.* at 797–98, 800 (quoting RESTATEMENT (SECOND) OF TORTS § 552B (1977)); *see D.S.A., Inc.,* 973 S.W.2d at 664. In *Sterling,* we emphasized that reliance damages, in contrast to benefit-of-the-bargain damages, are "measured as the *out-of-pocket* expenditures made by one party in reliance on the actions of another party, not by the amount of lost profits and sales." 259 S.W.3d at 798.

In its summary-judgment motion, PBS & J asserted that "[a]ll of the damages requested by CCE are economic in nature, recoverable only as the benefit of a lost bargain." However, CCE, in its Fifth Amended Original Petition, claimed that it had been damaged: "(1) as a result of having to *incur costs which it otherwise would not have had to incur,* if its contract with TxDOT had not been declared in

default; (2) by the loss of income which it would have received; and (3) by the impairment of CCE's ability to obtain bonding which caused a loss of future earnings and effectively put CCE out of business." (Emphasis added.)

As noted above, CCE's summary-judgment evidence included the affidavit of its Financial Control Officer, Phil Mahar, who testified that the additional completion costs incurred by CCE in hiring LR & B to complete the road project, over and above what it would have cost CCE to do the same work, was $2,423,752.20. Mahar also estimated that CCE had lost a total of $178,794.51 in compensation to which it would have been entitled from TxDOT under change orders, as well as $24,997.84 in interest and $265,819.45 in costs associated with the default. The total amount of additional completion costs and estimated additional costs and lost compensation is $2,893,364.00.

PBS & J argues that "[a]ll of these damages simply cut into CCE's profit, and they represent what would be required to place CCE in as good a position, profit-wise, as if it had never defaulted under the contract." PBS & J further argues that "[t]hese are clearly economic losses and they are benefit-of-bargain since they represent an amount that would put CCE in the position of having the full benefit of its TxDOT contact had the contract been fully performed."

However, CCE's damages are actually for its "pecuniary loss suffered otherwise as a consequence of [CCE's] reliance upon the misrepresentation[s]" of PBS & J. *See* RESTATEMENT (SECOND) OF TORTS § 552B(1)(b). CCE provided summary-judgment evidence that it paid $2,423,752.20 in out-of-pocket expenses to hire LB & R to complete the road project. This was an expense incurred over and above what it would have cost CCE to complete the road project. These expenses are the kind of pecuniary loss contemplated in illustration 9 of section 552 of the Restatement (Second) of Torts.

In its negligent-misrepresentation claim, CCE's live pleading and summary-judgment evidence establish that CCE is actually seeking reliance damages as measured by its out-of-pocket expenditures and consequential losses, not damages for the benefit of its bargain on its contract with TxDOT as measured by any lost sales or profits. Accordingly, we hold that the trial court erred in rendering summary judgment for PBS & J on the ground that the economic-loss rule bars CCE's recovery of its damages on its negligent-misrepresentation claim.

### *Causation*

■ PBS & J, in its styled "cross-appeal," argues that the trial court erred in denying its first summary-judgment motion because its conduct, as a matter of law, did not proximately cause CCE's alleged negligent-misrepresentation damages. PBS & J further argues that its conduct was neither the cause in fact nor a foreseeable cause of CCE's damages, as TxDOT's termination of CCE's construction contract was not a natural and probable result of any misrepresentation contained in PBS & J's engineering plans. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798–99 (Tex.2004) (discussing elements of proximate cause, cause in fact, and foreseeability).

We first note that, as a general rule, a party may not appeal the denial of a summary-judgment motion because it is an interlocutory order and, therefore, is not appealable. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996). However, the rule does not apply when a movant seeks summary judgment on multiple grounds and the trial court grants the

motion on one or more grounds, but denies it, or fails to rule, on one or more of the other grounds presented in the motion and urged on appeal. *Id.* at 625, 626. This exception to the general rule "does not depend on the number of motions filed, when they were presented to the trial court, or when the trial court ruled." *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5–6 (Tex.1999). Accordingly, we consider whether the trial court erred in denying PBS & J's first summary-judgment motion. *See id.*

PBS & J first asserts that even if the SW3P was defective, the sole cause in fact of TxDOT's declaration that CCE had defaulted under the construction contract was CCE's failure to correct the siltation problems to TxDOT's satisfaction. PBS & J notes that David Selman, a TxDOT engineer, testified "It's my opinion that those erosion control measures were not put in place as shown in the plans, and the contractor didn't take care of his responsibility of putting them in place." Second, PBS & J argues that it was not foreseeable that TxDOT would terminate the construction contract and "punish[ ] one of its other, innocent vendors, as CCE claims to be, because of any negligence or misrepresentation made in PBS & J's Plan."

As noted above, CCE produced summary-judgment evidence that the engineering plans, and specifically the SW3P, contained negligent misrepresentations, which PBS & J implicitly acknowledges in its argument. Indeed, PBS & J asserts that "even if CCE's version of the facts is accepted as true—i.e. that PBS & J' insufficient SW3P caused the siltation to occur—it was not the siltation that caused CCE to be in default under the contract." PBS & J argues, thus, that it was "CCE's stubborn refusal to comply with TxDOT's demands to fix the problem, *regardless of who caused it.*" (Emphasis added.)

In both of its causation points, PBS & J erroneously assumes that CCE's negligent-misrepresentation injury is TxDOT's declaration that CCE had defaulted on the construction contract and CCE is attempting to recover its lost profits under the construction contract. However, as revealed above, CCE is actually seeking reliance damages as measured by its out-of-pocket expenditures and consequential losses, not damages for the benefit of its bargain on its contract with TxDOT as measured by any lost sales or profits. CCE's alleged damages are largely its expenses incurred in hiring LB & R to complete the road project.

The fact that PBS & J may have presented some evidence that CCE may have caused or contributed to causing its own injuries does not conclusively establish that CCE's conduct was the sole cause of its injuries. Moreover, on the issue of foreseeability, it has long been the law in Texas that a plaintiff is not required to prove that a specific and particular event should have been foreseen. *Carey v. Pure Distrib. Corp.*, 133 Tex. 31, 124 S.W.2d 847, 849 (1939). Rather,

> All that is required [is] that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.

*Id.* (citation omitted). Here, again, the damages that CCE seeks are for its pecuniary loss as contemplated in illustration 9 of section 552 of the RESTATEMENT, and, as such, were readily foreseeable.

Indulging every reasonable inference and resolving all doubts in CCE's favor, we cannot hold as a matter of law that the alleged negligent misrepresentations of

PBS & J were not substantial factors in bringing about CCE's alleged injuries. *See IHS Cedars Treatment Ctr.,* 143 S.W.3d at 799. We also cannot hold as a matter of law that CCE's alleged injuries were not foreseeable. Accordingly, we hold that the trial court did not err in denying PBS & J's first summary-judgment motion.

Having so held, and, after having held that the trial court erred in rendering summary judgment for PBS & J on the grounds that there is no evidence that PBS & J made an affirmative misrepresentation of material fact and the economic-loss rule bars CCE's recovery of its damages on its negligent-misrepresentation claim, we sustain CCE's first issue.

### Breach of Warranty

In its second issue, CCE argues that the trial court erred in rendering summary judgment for PBS & J on CCE's breach-of-warranty claim because "PBS & J breached a warranty made to CCE ... where PBS & J knew that its promises would reach the contractor hired by TxDOT to build the road." CCE asserts that (1) there is no privity requirement for an implied warranty and (2) PBS & J made express representations to CCE. PBS & J argues that CCE has no breach of warranty claim because PBS & J was not in privity of contract with CCE as it sold no services to CCE and PBS & J made no express representation to CCE about the quality or characteristics of its services.

First, we note that Texas law does not recognize a cause of action for breach of an implied warranty of professional services. *See Murphy v. Campbell,* 964 S.W.2d 265, 268 (Tex.1997). Second, CCE concedes that it was not in privity of contract with PBS & J, and express warranties are generally imposed by agreement of the parties to a contract. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984).

CCE correctly notes that some courts of appeals, including this Court, have rejected the privity-of-contract requirement for certain purely economic losses for breach of an express warranty. *See, e.g., U.S. Tire–Tech, Inc. v. Boeran, B.V.,* 110 S.W.3d 194, 198 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); *Edwards v. Schuh,* 5 S.W.3d 829, 833 (Tex.App.-Austin 1999, no pet.); *Nat'l Bugmobiles, Inc. v. Jobi Props.,* 773 S.W.2d 616, 622 (Tex. App.-Corpus Christi 1989, writ denied); *Indust–Ri–Chem Lab., Inc. v. Par–Pak Co.,* 602 S.W.2d 282, 287–88 (Tex.App.-Dallas 1990, no writ). In these cases, however, there was either some evidence that a manufacturer had made a representation to induce a buyer or an express warranty that was freely transferrable. Thus, the reasoning in these cases is not applicable here.

An express warranty may be established by a representation of an affirmation of fact, a promise, or a description. *See Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.,* 227 S.W.3d 876, 886 (Tex.App.-Dallas 2007, no pet.). CCE argues that PBS & J made such an express warranty because the engineering plans contain the statement that a "copy of the Construction General Permit is a part of the SW3P," the plans bear an engineer's seal, and "PBS & J represented that its plans would work and it knew that CCE would rely on that representation when installing the erosion control measures designed by PBS & J." At best, these affirmations of fact or promises might constitute an implied warranty, but, as noted above, Texas law does not recognize such a cause of action for professional services. *See Murphy,* 964 S.W.2d at 268.

Accordingly, we overrule CCE's second issue.

## Equitable Subrogation

In its third issue, CCE also asks that this Court remand the case to the trial court for consideration of an equitable-subrogation claim, which, as it admits, it did not plead in the trial court. CCE asks us to do so in the interest of justice, citing the Texas Supreme Court's June 13, 2008 opinion in *Frymire Engineering Company v. Jomar International, Limited,* 259 S.W.3d 140 (Tex.2008).

We decline CCE's request. First, CCE never made this argument in the trial court, so there is no trial-court error for us to review. *See Blair v. Fletcher,* 849 S.W.2d 344, 345–46 (Tex.1993) (holding court of appeals may not vacate and remand for trial court to reconsider its judgment in light of changes in law). *See generally Westgate, Ltd. v. State,* 843 S.W.2d 448, 455 (Tex.1992) (discussing remands in interest of justice). Second, because we are reversing the trial court's summary judgment on other grounds, CCE may raise this issue in the trial court on remand if it so chooses.

We overrule CCE's third issue.

## Conclusion

We affirm the portion of the trial court's judgment that CCE take nothing on its breach-of-warranty claim against PBS & J. We reverse the portion of the trial court's judgment that CCE take nothing on its negligent-misrepresentation claim against PBS & J, and we remand the case to the trial court for further proceedings not inconsistent with this opinion.