Opinion issued January 28, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00040-CV

———————————

CCE, Inc., Appellant

V.

PBS&J
Construction Services, Inc.; Post, Buckley, Schuh & Jernigan, Inc.; and
Yu-Chun Su, P.E.,
Appellees



 



 

On Appeal from the 215th District Court

Harris County, Texas



Trial Court Case No. 2006-46041

 



 

MEMORANDUM OPINION

Appellant, CCE, Inc., challenges the trial court’s
rendition of summary judgment in favor of appellees, PBS&J Construction
Services, Inc.; Post, Buckley, Schuh & Jernigan, Inc.; and Yu-Chen Su, P.E.
(collectively “PBS&J”), on CCE’s claims against PBS&J for negligent
misrepresentation and breach of warranty.  In two of its three issues, CCE contends that
the trial court erred in rendering summary judgment against CCE (1) on its
negligent-misrepresentation claim on the grounds that PBS&J made no
affirmative misrepresentation of material fact and the economic-loss rule bars
recovery of CCE’s “benefit-of-the-bargain damages” and (2) on its
breach-of-warranty claim on the grounds that PBS&J was “not in privity [of
contract] with CCE” and PBS&J made no express representation to CCE about
the quality or character of its services. 
Alternatively, in its third issue, CCE contends that it should now be
allowed to raise a claim against PBS&J for equitable subrogation.  In a styled “cross-appeal,”[1]
PBS&J contends that the trial court erred in denying it summary judgment on
CCE’s negligent-misrepresentation claim on the ground that PBS&J did not proximately
cause CCE’s alleged damages.

          We
affirm the trial court’s judgment in part, reverse the trial court’s judgment
in part, and remand for further proceedings.

Background

          The
critical facts are largely undisputed.  The
Texas Department of Transportation (“TxDOT”) hired PBS&J to draft
engineering plans and specifications for a new road, FM 2435, in Nacogdoches
County (the “road project”).  PBS&J devised
the plans, including a “Storm Water Pollution Prevention Plan” (the “SW3P”), which
was required by a general surface‑water
discharge permit (the “permit”), issued by the Texas Commission on Environmental
Quality (“TCEQ”), for the road project to prevent pollution from wastewater
discharges entering into nearby waterways in violation of the Clean Water Act.[2]

          TxDOT awarded the construction contract for the road
project to CCE, a
general contractor.  TxDOT’s “Standard Specifications for
Construction of Highways, Streets and Bridges” generally requires that all work
performed by a contractor on a TxDOT project must be in conformity with TxDOT
plans, unless a deviation is approved by the TxDOT engineer responsible for the
project.  CCE alleged that it was
contractually bound to configure erosion control measures for the road project in
compliance with the SW3P designed by PBS&J and that it, in fact, complied
with the SW3P.

          TxDOT, on December 22, 2004, notified CCE that silt had discharged
from the road project and accumulated on nearby private property, and TxDOT instructed
CCE to suspend work on the road project until “all erosion control measures [were]
in place.”  On January 7, 2005, TxDOT
expressed to CCE that it believed that the erosion and “siltation” problems arose
from CCE’s “failure to provide the control measures required by the plans.”  And TxDOT notified CCE that it had ten days
to correct the alleged contract violations, or CCE would be considered in
default under the construction contract. 
On January 18, 2005, TxDOT declared CCE in default, ordered CCE to cease
work, and notified CCE’s surety that it was obligated to arrange for completion
of the road project.

CCE then hired Longview Road and Bridge, Ltd. (“LR&B”)
to complete the road project.  In its
summary‑judgment evidence, CCE included the affidavit of its Financial
Control Officer, Phil Mahar, who testified that hiring LR&B to complete the
road project caused CCE to spend $2,423,752.20 more than it would have had it
been able to complete the project on its own.

In its Fifth Amended Original
Petition, CCE, in regard to its negligent misrepresentation claim, alleged that
PBS&J “recklessly” or “without reasonable care” submitted the SW3P to TxDOT
knowing that construction contractors like CCE would bid on and attempt to
build the road project in reliance on the SW3P. 
CCE further alleged that the SW3P “contained numerous false statements
of material existing fact including, but not limited to, the representation[s]
that it was an instrument of service resulting from an engineering process when
it was not, that it complied with the [p]ermit and [TxDOT] [g]uidelines, and
that if CCE followed it, the [engineering] [p]lans and SW3P would work.”  In regard to its breach­‑of‑warranty
claim, CCE alleged that PBS&J “provided express and written warranties and
represented that its [p]lans and SW3P conformed to the [p]ermit and
[g]uidelines, when they did not.”  CCE
further alleged that PBS&J represented that the engineering plans and the SW3P
“were instruments of services resulting from an engineering process, when they
were not”; PBS&J “admitted that it expressly warranted and represented that
if CCE followed the [p]lans and SW3P, they would work; and the plans and SW3P
did not “conform with the [p]ermit and [g]uidelines and the SW3P did not work.”  CCE did not assert a claim for equitable
subrogation against PBS&J.

In its first summary-judgment motion,
PBS&J argued that it was entitled to judgment as a matter of law on CCE’s
negligent‑misrepresentation claim because “PBS&J’s alleged misconduct
was not the cause in fact of CCE’s alleged injuries,” “CCE’s alleged injuries
[were] not a forseeable result of PBS&J’s alleged misconduct,” and PBS&J
did not cause the termination of CCE’s construction contract and its alleged
damages.  The trial court denied PBS&J’s
motion.

In a second summary-judgment motion
and a supplemental summary‑judgment motion, PBS&J contended that it
was entitled to summary judgment as a matter of law and on no-evidence grounds.
In regard to CCE’s negligent‑misrepresentation claim, PBS&J asserted
that there is no evidence that it made an affirmative misrepresentation of
material fact to CCE and, as a matter of law, the economic-loss rule bars
recovery of CCE’s damages and CCE may not recover “benefit-of-the-bargain
damages” on its negligence claim.  In
regard to CCE’s breach-of-warranty claim, PBS&J argued that because
PBS&J did not sell services to CCE, it was “not in privity with CCE.”  PBS&J also asserted that it had made no
express representation to CCE about the quality or character of any of its services.

          The
trial court rendered summary judgment for PBS&J on all grounds asserted in
its second and supplemental summary-judgment motions.  PBS&J then moved to dismiss its remaining
counterclaim, and the trial court signed a final judgment from which CCE
appeals.

Standard of Review

To prevail on
a summary‑judgment motion, a movant has the burden of proving that it is
entitled to judgment as a matter of law and there is no genuine issue of
material fact.  Tex. R. Civ. P. 166a(c); Cathey
v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). 
When a defendant moves for summary judgment, it must either (1) disprove
at least one essential element of the plaintiff’s cause of action or (2) plead
and conclusively establish each essential element of its affirmative defense, thereby
defeating the plaintiff’s cause of action. Cathey,
900 S.W.2d at 341; Yazdchi v. Bank One,
Tex., N.A., 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet.
denied).  When deciding whether there is
a disputed, material fact issue precluding summary judgment, evidence favorable
to the nonmovant will be taken as true.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548–49 (Tex. 1985).  Every
reasonable inference must be indulged in favor of the nonmovant and any doubts
must be resolved in its favor.  Id. at 549.

To prevail on
a no-evidence summary-judgment motion, a movant must allege that there is no
evidence of an essential element of the adverse party’s cause of action or
affirmative defense.  Tex. R. Civ. P. 166a(i); Fort Worth Osteopathic Hosp., Inc. v. Reese,
148 S.W.3d 94, 99 (Tex. 2004).  We review
a no-evidence summary judgment under the same legal‑sufficiency standard
used to review a directed verdict.  Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,
12 S.W.3d 827, 832–33 (Tex. App.—Dallas 2000, no pet.).  Although the nonmoving party is not required
to marshal its proof, it must present evidence that raises a genuine issue of
material fact on each of the challenged elements.  Tex.
R. Civ. P. 166a(i); see Ford Motor
Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  A no-evidence summary judgment motion may not
be granted if the nonmovant brings forth more than a scintilla of evidence to
raise a genuine issue of material fact on the challenged elements.  See
Ridgway, 135 S.W.3d at 600.  More
than a scintilla of evidence exists when the evidence “rises to a level that would
enable reasonable and fair‑minded people to differ in their conclusions.”
 Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  When reviewing a no‑evidence summary‑judgment motion, we
assume that all evidence favorable to the nonmovant is true and indulge every
reasonable inference and resolve all doubts in favor of the nonmovant.  Spradlin
v. State, 100 S.W.3d 372, 377 (Tex. App.—Houston [1st Dist.] 2002, no
pet.). 

Negligent Misrepresentation

In its first issue, CCE argues that the trial court erred in rendering
summary judgment in favor of PBS&J on CCE’s negligent-misrepresentation
claim because (1) PBS&J, in “the contents of the SW3P and the seal required
to make it effective,” made affirmative misrepresentations of material fact and
(2) CCE is not seeking to recover “benefit-of-the-bargain damages,” but rather
“out-of-pocket” and consequential damages, which are not barred under the
economic-loss rule.  PBS&J, in its
styled “cross appeal,” argues that the trial court erred in denying its first summary-judgment
motion on CCE’s negligent-misrepresentation claim because PBS&J did not
proximately cause CCE’s alleged damages.          

Texas has
long recognized a cause of action for the tort of negligent misrepresentation, or
negligently supplying information for the guidance of others, in which a
plaintiff must prove that:

(1)    a
defendant, in the course of its business or in a transaction in which it had a
pecuniary interest, made a representation, 

 

(2)    the
defendant supplied “false information” for the guidance of another in the other’s
business,

 

 

(3)    the
defendant did not exercise reasonable care or competence in obtaining or communicating
the information; and

 

(4)    the
plaintiff suffered pecuniary loss by justifiably relying on the representation.

 

See Fed. Land Bank Ass’n of Tyler v. Sloane, 825
S.W.2d 439, 442 (Tex. 1991) (citing Restatement
(Second) of Torts § 552(1)
(1977)).  The supplier of such false
information is liable for the loss suffered by those for “whose benefit and
guidance he intends to supply the information or knows that the recipient
intends to supply it” and “through reliance upon it in a transaction that he intends
the information to influence or knows that the recipient so intends or in a
substantially similar transaction.”  Id. at § 552(2).

Misrepresentation of
material fact

          PBS&J
argues that CCE “cannot show that PBS&J made any actual affirmative representations
in the SW3P of any existing fact” because, “[a]t best” CCE has only “inferences
and references to other documents to piece together what can only amount to
implied professional opinions about the anticipated performance of a plan that
would be used, throughout an extensive construction project, to reduce
pollution leaving the site.”  In support
of its argument, PBS&J characterizes CCE’s primary allegation as PBS&J
having “made an affirmative representation that the SW3P would prevent any pollutants from leaving the
site.”  (Emphasis added.)  This, however, is not the gist of CCE’s
allegations.  Rather, the gist of CCE’s
allegations is that PBS&J, in its plans, supplied CCE with false
information and did not exercise reasonable care in obtaining or communicating
the information contained within the plans.

          CCE presented summary‑judgment evidence
that PBS&J represented that its engineering plans complied with the TCEQ’s surface‑water discharge
permit, which required, in part, the following:

[T]he SW3P must describe and ensure the
implementation of practices that will be used to reduce the pollutants in storm
water discharges associated with construction activity at the construction site
and assure compliance with the terms and
conditions of this permit.

 

(Emphasis added.)  Also, PBS&J’s engineering plans contain a
statement that a “copy of the Construction General Permit is a part of the SW3P,”
and the plans bear the engineer’s seal of Dr. Yu-Chun Su.  See
22 Tex. Admin. Code § 137.33(a), (b) (2010) (Tex. Bd. of Prof’l
Eng’rs, Sealing Procedures).  Section 137.33 provides:

(a) The purpose of the engineer’s seal is to assure the user of the engineering
product that the work has been performed or directly supervised by the
professional engineer named and to delineate the scope of the engineer’s work.

 

(b)
License holders shall only seal work done by them, performed under their direct
supervision as defined in § 131.81 of this title, relating to Definitions, or
shall be standards or general guideline specifications that they have reviewed
and selected.  Upon sealing, engineers take full professional responsibility for that
work.

 

Id. (emphasis added).

CCE also
presented summary‑judgment evidence that the SW3P was not sufficient and
did not comply with the permit and generally accepted engineering practices and
standards.  CCE’s engineering expert,
David C. Riddle, in his report, stated:

As a result of my evaluation of the materials made
available to me, I have determined that PBS&J, in the performance of design
services associated with the preparation of the Storm Water Pollution
Prevention Plan (SW3P) for the construction of FM 2435 in Nacogdoches County,
Texas did not comply with accepted professional engineering standards, with
generally accepted engineering standards and procedures, with generally
accepted standards for the preparation of SW3P’s for construction sites, with
the duty to protect the property and welfare of the public, with the
requirements of the TCEQ General Permit TXR150000, and with the requirements of
the U.S. Army Corps of Engineer Nationwide Permit 14 . . . . for impacts to
Waters of the U.S. relative to the following:

 

1.     Failure to include elements
on the SW3P site map that are required by the TPDES General Permit.

 

2.     Failure to include elements
in the SW3P that are required by the TPDES General Permit.

 

3.     Failure to address
stabilization requirements in the SW3P that would serve to minimize erosion
during construction activities, as required by the TPDES General Permit.

 

4.      Failure to include water quality Best
Management Practices required by U.S. Army Corps of Engineeers permits for areas
that were covered by Corps permits or for other receiving bodies of water
potentially affected by construction activities.

 

5.     Failure to specify proper
best management practices for the site conditions which should have been
expected during construction activities. 

 

Riddle also
opined that PBS&J, in the SW3P, omitted important mapping information,
omitted planning measures, provided no guidance on removal of existing
vegetation, and omitted water-quality measures. 
He also opined that the SW3P contained poor engineering practices.  From this evidence, a reasonable fact-finder
could infer that PBS&J did not properly perform the work necessary to
properly obtain the permit and begin construction of the road project.  And, as noted above, the
purpose of the engineer’s seal on the engineering plans was “to assure the user of the engineering
product that the work has been performed.” 
See 22 Tex. Admin. Code § 137.33(a) (2010).

          To
the extent that PBS&J argues that its engineering plans are “not actionable
because they are merely expressions of PBS&J’s professional opinion,” we
are not aware of any authority standing for a general proposition that a
professional engineer’s plans cannot constitute a representation or contain
false information.  As noted by CCE, the Restatement
contemplates just such a situation:

The City of A is about to ask for bids for work on a
sewer tunnel.  It hires B Company, a firm
of engineers, to make boring tests and provide a report showing the rock and
soil conditions to be encountered.  It
notifies B Company that the report will be made available to bidders as a basis
for their bids and that it is expected to be used by the successful bidder in
doing the work.  Without knowing the
identity of any of the contractors bidding on the work, B Company negligently
prepares and delivers to the City an inaccurate report, containing false and
misleading information.  On the basis of
the report C makes a successful bid, and also on the basis of the report D, a
subcontractor, contracts with C to do a part of the work.  By reason of the inaccuracy of the report, C
and D suffer pecuniary loss in performing their contracts.  B Company is subject to liability to C and D.

 

Restatement
(Second) of Torts § 552 cmt.
h, illus. 9 (1977).

Taking CCE’s
evidence as true, as we
must in a summary‑judgment review, and indulging every reasonable
inference in favor of CCE and resolving any doubts in its favor, we conclude that
CCE presented more than a scintilla of evidence that PBS&J made affirmative
misrepresentations of material fact.  Accordingly,
we hold that the trial court erred in rendering summary judgment for PBS&J
on the ground that there is no evidence that PBS&J made an affirmative
misrepresentation of material fact.

Damages

PBS&J argues that CCE may not recover
damages on its negligent‑misrepresentation claim because CCE, in effect,
is seeking to recover its “lost profits” or “benefit-of-the-bargain”
damages.  PBS&J asserts that the
“economic loss rule prevents” CCE “from recovering what are essentially
contract damages under a tort theory of liability.”  See Sw.
Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991).

          As noted by the Texas Supreme Court, “damages recoverable
for a negligent misrepresentation are those necessary to compensate the
plaintiff for the pecuniary loss to him
of which the misrepresentation is a legal cause,” including

(a)   The difference between the value of what he
has received in the transaction and its purchase price or other value given for
it; and

 

(b)  pecuniary loss suffered otherwise
as a consequence of the plaintiff’s reliance upon the misrepresentation.

 

Sloane, 825
S.W.2d at 442 (emphasis added) (quoting Restatement
(Second) of Torts § 552B (1977)); see D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,
973 S.W.2d 662, 663–64 (Tex. 1998) (discussing Sloane’s adoption of section 552B). 
The damages recoverable for a negligent misrepresentation do not include
the benefit of the bargain of a plaintiff’s contract with a defendant.  Sloane,
825 S.W.2d at 442 (quoting Restatement
(Second) of Torts § 552B (1977)).  Rather,
“[u]nder the economic loss rule, a plaintiff may not bring a claim for
negligent misrepresentation unless the plaintiff can establish that he suffered
an injury that is distinct, separate, and independent from the economic losses
recoverable under a breach of contract claim.” 
See Sterling Chems., Inc. v. Texaco, Inc.,
259 S.W.3d 793, 797 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing D.S.A., Inc., 973 S.W.2d at 664).

Moreover, this
Court has held that benefit‑of‑the‑bargain
damages are not recoverable for negligent misrepresentation even when there is
no privity of contract between the plaintiff and the defendant.  See
Sterling Chems., Inc., 259 S.W.3d at 796–98.  In Sterling,
a chemical manufacturer, Sterling, contracted with a construction firm to,
using proprietary gasification technology owned by Texaco, build a facility to
produce synthetic gas.  259 S.W.3d at
795.  Sterling alleged that it, in
entering the contract with the construction firm, relied upon representations
made by Texaco about its technology, even though Texaco was not a party to the
contract.  Id.  When the completed
facility did not produce synthetic gas as anticipated, Sterling sued Texaco for
negligent misrepresentation, seeking damages for its “lost sales and profits.”  Id.
at 796, 798.  This Court, applying the
economic‑loss rule, affirmed the trial court’s summary judgment in favor
of Texaco.  Id. at 800.

Under the economic‑loss rule, a duty in tort does not lie when the
only injury claimed is one for economic damage recoverable under a breach‑of‑contract
claim.  Id. at 796.  Accordingly,
when a plaintiff seeks to recover for only the loss or damage to the subject
matter of a contract, the plaintiff cannot maintain a tort action against the
defendant.  Id. at 796–98 (citing DeLanney,
809 S.W.2d at 494).  Because Sterling’s
claims for “lost sales and profits” were for its “benefit‑of‑the‑bargain”
of its contract with the construction firm, we held that Sterling could not recover
damages from Texaco for negligent misrepresentation.  Id.
at 797–98, 800 (quoting Restatement
(Second) of Torts § 552B
(1977)); see D.S.A., Inc., 973 S.W.2d at 664. 
In Sterling, we emphasized
that reliance damages, in contrast to benefit‑of‑the‑bargain
damages, are “measured as the out‑of‑pocket
expenditures made by one party in reliance on the actions of another party, not
by the amount of lost profits and sales.” 
259 S.W.3d at 798.

 In its summary-judgment motion, PBS&J asserted that “[a]ll of the
damages requested by CCE are economic in nature, recoverable only as the
benefit of a lost bargain.”  However, CCE,
in its Fifth Amended Original Petition, claimed that it had been damaged: “(1)
as a result of having to incur costs
which it otherwise would not have had to incur, if its contract with TxDOT
had not been declared in default; (2) by the loss of income which it would have
received; and (3) by the impairment of CCE’s ability to obtain bonding which
caused a loss of future earnings and effectively put CCE out of business.”  (Emphasis added.)

          As
noted above, CCE’s summary‑judgment evidence included the affidavit of its
Financial Control Officer, Phil Mahar, who testified that the additional
completion costs incurred by CCE in hiring LR&B to complete the road project,
over and above what it would have cost CCE to do the same work, was $2,423,752.20.  Mahar also estimated that CCE had lost a total
of $178,794.51 in compensation to which it would have been entitled from TxDOT under
change orders, as well as $24,997.84 in interest and $265,819.45 in costs
associated with the default.  The total amount
of additional completion costs and estimated additional costs and lost
compensation is $2,893,364.00.

          PBS&J
argues that “[a]ll of these damages simply cut into CCE’s profit, and they
represent what would be required to place CCE in as good a position, profit‑wise,
as if it had never defaulted under the contract.”  PBS&J further argues that “[t]hese are
clearly economic losses and they are benefit‑of‑bargain since they
represent an amount that would put CCE in the position of having the full
benefit of its TxDOT contact had the contract been fully performed.”  

However, CCE’s damages are actually for
its “pecuniary loss suffered otherwise as a consequence of [CCE’s] reliance upon the misrepresentation[s]” of
PBS&J.  See Restatement
(Second) of Torts § 552B(1)(b).  CCE provided summary‑judgment evidence
that it paid $2,423,752.20 in out‑of‑pocket expenses to hire
LB&R to complete the road project. 
This was an expense incurred over and above what it would have cost CCE
to complete the road project.  These
expenses are the kind of pecuniary loss
contemplated in illustration 9 of section 552 of the Restatement (Second) of
Torts.

          In its negligent‑misrepresentation claim, CCE’s live pleading
and summary‑judgment evidence establish that CCE is actually seeking
reliance damages as measured by its out‑of‑pocket expenditures and
consequential losses, not damages for the benefit of its bargain on its
contract with TxDOT as measured by any lost sales or profits.  Accordingly, we hold that the trial court
erred in rendering summary judgment for PBS&J on the ground that the
economic-loss rule bars CCE’s recovery of its damages on its
negligent-misrepresentation claim.

Causation

          PBS&J, in its styled “cross-appeal,” argues that the
trial court erred in denying its first summary-judgment motion because its conduct,
as a matter of law, did not proximately cause CCE’s alleged negligent-misrepresentation damages. 
PBS&J further argues that its conduct was neither the cause
in fact nor a foreseeable cause of CCE’s damages, as TxDOT’s termination of
CCE’s construction contract was not a natural and probable result of any
misrepresentation contained in PBS&J’s engineering plans.  See
IHS Cedars Treatment Ctr. Of DeSoto,
Tex., Inc. v. Mason, 143 S.W.3d 794, 798–99 (Tex. 2003) (discussing
elements of proximate cause, cause in fact, and foreseeability).

We first note that, as a general rule, a party may not appeal the denial of a summary-judgment
motion because it is an interlocutory order and, therefore, is not appealable.  See Cincinnati Life Ins. Co. v. Cates,
927 S.W.2d 623, 625 (Tex. 1996).  However, the rule
does not apply when a movant seeks summary judgment on multiple grounds and the
trial court grants the motion on one or more grounds, but denies it, or fails
to rule, on one or more of the other grounds presented in the motion and urged
on appeal.  Id. at 625, 626.  This
exception to the general rule “does not depend on the number of motions filed,
when they were presented to the trial court, or when the trial court ruled.”  Baker
Hughes, Inc. v. Keco R. & D., Inc., 12 S.W.3d 1, 5–6 (Tex. 1999).  Accordingly, we consider whether the trial
court erred in denying PBS&J’s first summary-judgment motion.  See id.

PBS&J first asserts that even if
the SW3P was defective, the sole cause in fact of TxDOT’s declaration that CCE
had defaulted under the construction contract was CCE’s failure to correct the
siltation problems to TxDOT’s satisfaction. 
PBS&J notes that David Selman, a TxDOT engineer, testified “It’s my
opinion that those erosion control measures were not put in place as shown in
the plans, and the contractor didn’t take care of his responsibility of putting
them in place.”  Second, PBS&J argues
that it was not foreseeable that TxDOT would terminate the construction
contract and “punish[] one of its other, innocent vendors, as CCE claims to be,
because of any negligence or misrepresentation made in PBS&J’s Plan.”

As noted above, CCE produced summary‑judgment
evidence that the engineering plans, and
specifically the SW3P, contained
negligent misrepresentations, which PBS&J implicitly acknowledges in
its argument.  Indeed, PBS&J asserts
that “even if CCE’s version of the facts is accepted as true—i.e. that PBS&J’s insufficient
SW3P caused the siltation to occur—it was not the siltation that caused
CCE to be in default under the contract.” 
PBS&J argues, thus, that it was “CCE’s stubborn refusal to comply
with TxDOT’s demands to fix the problem, regardless
of who caused it.”  (Emphasis added.)

In both of its causation points,
PBS&J erroneously assumes that CCE’s negligent-misrepresentation injury is
TxDOT’s declaration that CCE had defaulted on the construction contract and CCE
is attempting to recover its lost profits under the construction contract.  However, as revealed above, CCE is actually seeking reliance damages as measured
by its out‑of‑pocket expenditures and consequential losses, not
damages for the benefit of its bargain on its contract with TxDOT as measured
by any lost sales or profits.  CCE’s
alleged damages are largely its expenses incurred in hiring LB&R to
complete the road project.

The fact that PBS&J may have
presented some evidence that CCE may have caused or contributed to causing its
own injuries does not conclusively establish that CCE’s conduct was the sole
cause of its injuries.  Moreover, on the
issue of foreseeability, it has long been the law in Texas that a plaintiff is
not required to prove that a specific and particular event should have been
foreseen.  Carey v. Pure Distrib. Corp., 124 S.W.2d 847, 849 (Tex. 1939).  Rather, 

All that
is required [is] that the injury be of such a general character as might
reasonably have been anticipated; and that the injured party should be so
situated with relation to the wrongful act that injury to him or to one
similarly situated might reasonably have been foreseen.

 

Id. (citation omitted).  Here, again, the damages that CCE seeks are
for its pecuniary loss as contemplated
in illustration 9 of section 552 of the Restatement,
and, as such, were readily foreseeable. 

          Indulging
every reasonable inference and resolving all doubts in CCE’s favor, we cannot
hold as a matter of law that the alleged negligent misrepresentations of
PBS&J were not substantial factors in bringing about CCE’s alleged injuries.  See
IHS Cedars Treatment Ctr., 143 S.W.3d
at 799.  We also cannot hold as a matter
of law that CCE’s alleged injuries were not foreseeable.  Accordingly, we hold that the trial court did
not err in denying PBS&J’s first summary-judgment motion.

          Having so held, and, after having held
that the trial court erred in rendering summary judgment for PBS&J on the
grounds that there is no evidence that PBS&J made an affirmative
misrepresentation of material fact and the
economic-loss rule bars CCE’s recovery of its damages on its
negligent-misrepresentation claim, we sustain CCE’s first issue.

Breach of Warranty

          In its second issue, CCE argues that the trial court erred in rendering summary
judgment for PBS&J on CCE’s breach-of-warranty claim because “PBS&J
breached a warranty made to CCE . . . where PBS&J knew that its promises
would reach the contractor hired by TxDOT to build the road.”  CCE asserts that (1) there is no privity
requirement for an implied warranty and (2) PBS&J made express
representations to CCE.  PBS&J argues
that CCE has no breach of warranty claim because PBS&J was not in privity
of contract with CCE as it sold no services to CCE and PBS&J made no
express representation to CCE about the quality or characteristics of its
services. 

First, we note that Texas law does
not recognize a cause of action for breach of an implied warranty of
professional services.  See Murphy
v. Campbell, 964 S.W.2d 265, 268 (Tex. 1997).  Second, CCE concedes that it was not in
privity of contract with PBS&J, and express warranties are generally
imposed by agreement of the parties to a contract.  See
La Sara Grain Co. v. First Nat’l Bank of
Mercedes, 673 S.W.2d 558, 565 (Tex. 1984).

          CCE
correctly notes that some courts of appeals, including this Court, have
rejected the privity‑of‑contract requirement for certain purely
economic losses for breach of an express warranty.  See,
e.g., U.S. Tire‑Tech, Inc. v.
Boeran, B.V., 110 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2003, pet.
denied); Edwards v. Schuh, 5 S.W.3d 829,
833 (Tex. App.—Austin 1999, no pet.); Nat’l
Bugmobiles, Inc. v. Jobi Props., 773 S.W.2d 616, 622 (Tex. App.—Corpus
Christi 1989, writ denied); Indust‑Ri‑Chem
Lab., Inc. v. Par‑Pak Co., 602 S.W.2d 282, 287–88 (Tex. App.—Dallas
1990, no writ).  In these cases, however,
there was either some evidence that a manufacturer had made a representation to
induce a buyer or an express warranty that was freely transferrable.  Thus, the reasoning in these cases is not
applicable here.

          An
express warranty may be established by a representation of an affirmation of
fact, a promise, or a description.  See Paragon
Gen. Contractors, Inc. v. Larco Constr., Inc., 227 S.W.3d 876, 886 (Tex.
App.—Dallas 2007, no pet.).  CCE argues
that PBS&J made such an express warranty because the engineering plans contain the statement that
a “copy of the Construction General Permit is a part of the SW3P,” the plans
bear an engineer’s seal, and “PBS&J represented that its plans would work
and it knew that CCE would rely on that representation when installing the
erosion control measures designed by PBS&J.”  At best, these affirmations of fact or
promises might constitute an implied warranty, but, as noted above, Texas law
does not recognize such a cause of action for professional services.  See
Murphy, 964 S.W.2d at 268.

          Accordingly,
we overrule CCE’s second issue. 

Equitable Subrogation

          In its third issue, CCE also asks that this Court remand
the case to the trial court for consideration of an equitable‑subrogation
claim, which, as it admits, it did not plead in the trial court.  CCE asks us to do so in the interest of
justice, citing the Texas Supreme Court’s June 13, 2008 opinion in Frymire Engineering Company v. Jomar International,
Limited, 259 S.W.3d 140 (Tex. 2008).

We decline CCE’s
request.  First, CCE never made this
argument in the trial court, so there is no trial‑court error for us to
review.  See Blair v. Fletcher, 849 S.W.2d 344, 345–46 (Tex. 1993) (holding
court of appeals may not vacate and remand for trial court to reconsider its
judgment in light of changes in law).  See generally Westgate, Ltd. v. State, 843 S.W.2d 448, 455 (Tex. 1992)
(discussing remands in interest of justice). 
Second, because we are reversing the trial court’s summary judgment on
other grounds, CCE may raise this issue in the trial court on remand if it so
chooses. 

We overrule
CCE’s third issue.

 

 

 

 

 

 

 

 

 

 

 

Conclusion

          We
affirm the portion of the trial court’s judgment that CCE take nothing on its
breach‑of‑warranty claim against PBS&J.  We reverse the portion of the trial court’s
judgment that CCE take nothing on its negligent‑misrepresentation claim
against PBS&J, and we remand the case to the trial court for further
proceedings not inconsistent with this opinion.

          

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings and Alcala.[3]











[1]
          Although
the parties refer to this as a “cross-appeal,” this actually is an additional
argument in support of the trial court’s judgment.  See Baker Hughes, Inc. v. Keco R. & D., Inc.,
12 S.W.3d 1, 5–6 (Tex. 1999).





[2]
          See generally 33 U.S.C. § 1342 (allowing
states to administer permits under Clean Water Act).





[3]           This
case was originally submitted with oral argument to a panel consisting of
Justices Jennings, Hanks, and Alcala. 
The Honorable George C. Hanks,
Jr. left the Court on September 13, 2010 to become a United States Magistrate
Judge.  The case is, therefore, being
decided by the two remaining justices.  See Tex.
R. App. P. 41.1(b).