

NUMBER 13-20-00553-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

---

HERBERT B. RICHARDSON,                                        Appellant,

v.

THEODORE ROBERTS,                                              Appellee.

---

On appeal from the 215th District Court
of Harris County, Texas.

---

# MEMORANDUM OPINION

Before Justices Longoria, Hinojosa, and Silva
Memorandum Opinion by Justice Hinojosa

By three issues, appellant Herbert B. Richardson argues the trial court erred when

it granted appellee Theodore Roberts's motion for summary judgment, thereby dismissing

Richardson's claims for breach of contract and fraudulent inducement. Richardson also

challenges the trial court's award of Roberts's attorney's fees under the Uniform

Declaratory Judgment Act (UDJA). We reverse and remand.

## I.  BACKGROUND[1]

### A.    The Underlying Sale

Richardson agreed to purchase a commercial real estate property, 1501 Ojeman in Houston, Texas (the Ojeman Property), from Roberts for the purchase price of $4.5 million dollars. Richardson paid $50,000 as earnest money upon the execution of a purchase contract.

The parties amended the purchase contract three times to extend the closing date. In the first amendment, Richardson paid Roberts an additional $15,000 monthly for six months as earnest money, for a total of $90,000, to extend the closing date to February 5, 2016. In the second amendment, Richardson paid Roberts another $15,000 to extend the closing date to March 15, 2016. Under the third amendment, Richardson paid an additional $15,000 to extend the closing date to March 25, 2016.

The sale did not close on March 25, 2016. Under the terms of the original purchase contract, Roberts was entitled to retain all the earnest money under the contract. The earnest money amount at that point was $170,000. Richardson, however, refused to sign a release of the funds. Richardson instead filed a lawsuit, alleging that "Roberts materially breached [the purchase contract] by allowing the [p]roperty to deteriorate and suffer significant physical damage from water intrusion, mold, and other sources after the

---

[1] This case is before this Court on transfer from the First Court of Appeals in Houston pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

effective date of the [c]ontract, far beyond what would constitute 'ordinary wear and tear.'"

Richardson also filed a notice of lis pendens on the Ojeman Property.

On January 22, 2018, the day of trial, the parties entered into the following handwritten Rule 11 settlement agreement (Rule 11 Agreement):

(1)     1501 Ojeman go[e]s back onto the market for sale[.]

(2)     Lis pendens released immediately[.]

(3)     If [Richardson] is [the] high[est] bidder, he gets property with full credit for [earnest money paid to title company]—no new [earnest money.]

(4)     [Roberts] gets $50,000 [earnest money] at title co[mpany] released immediately—[Richardson] to sign[.]

(5)     If [Richardson] is not [the] high[est] bidder, [earnest money will be] fully returned.

(6)     Bidding open for 45 days starting by no later than 3/1/18.

(7)     Same brokers—Bish[ale] Patel.

(8)     If high[est] bidder, [Richardson] to fund and close within 90 days of signing [earnest money] contract. If not, all [earnest money will be] forfeited.

(9)     Case abated—once [Richardson's earnest money] is refunded, if applicable or he signs [earnest money contract and] is accepted as high bidder, mutual take nothing judgment entered—each side pays own costs [and] attorney fees . . . .

Richardson abated the case and trial was averted. Richardson also withdrew the lis pendens. Roberts claimed he immediately placed the Ojeman Property back onto the market that same day, although the listing agreement with Patel was not dated until March 5, 2018.[2] On March 22 or 23, 2018, Roberts received a $5.65 million dollar bid from a

---

[2] The listing agreement has a March 5, 2018 date at the top of the document, but the date block on the signature page is blank.

third-party bidder. Patel, the listing broker, relayed this information to Richardson via email correspondence and informed Richardson he had until March 27, 2018 to submit a competing bid. Richardson did not submit a subsequent offer. Roberts signed a new purchase agreement with the new bidder on March 30, 2018. To prohibit the sale, Richardson re-filed a notice of lis pendens on the Ojeman Property on April 3, 2018.

The parties entered into a "Partial Settlement Agreement" on June 13, 2018, agreeing to "a partial resolution of their disputes to enable [Roberts] to proceed with the sale of the Ojeman Property while preserving [Richardson's] rights with respect to his remaining claims and remedies." The parties agreed that if the "current sale price [was] reduced below $5,650,000.00 prior to closing, then the bidding process starts over and [Richardson] will have the opportunity to re-bid on the Ojeman Property." The price remained at $5.65 million dollars, however, and Roberts proceeded with the sale. In accordance with the Partial Settlement Agreement, Roberts placed Richardson's entire $170,000 earnest money amount into the registry of the court, pending trial of Richardson's underlying claims.

## B.    The Continued Litigation

On June 29, 2018, Richardson filed a fifth amended petition, re-urging his breach of contract and fraudulent inducement claims. In the petition, Richardson contended that Roberts breached the January 22, 2018 Rule 11 Agreement. Roberts filed a counterclaim under the UDJA, asking the court to declare the pending lis pendens void and that the parties' original purchase contract and its amendments were null and void due to waiver,

4

novation, and accord and satisfaction.

Roberts also filed a motion for summary judgment on Richardson's breach of contract and fraudulent inducement claims. To support his argument that Richardson had no breach of contract claim, Roberts submitted portions of Richardson's deposition whereby Richardson admitted that he did not place a bid on the Ojeman Property because Roberts failed to provide important financial information:

COUNSEL: Okay. Did you ever make a bid on the property at 1501 Ojeman?

RICHARDSON: I didn't have the right stuff to be able to place a bid.

COUNSEL: Okay. So, the answer would be no?

RICHARDSON: No.

Richardson also testified that he would not have submitted a bid higher than the winning third-party bid of $5.65 million dollars. This fact was buttressed by the testimony of Patel, the Ojeman Property sale broker. Patel stated that he sent Richardson an email correspondence on March 22 or 23 informing Richardson about the $5.65 million dollar offer. The email further stated that Richardson had until March 27, 2018, to place a higher bid. Patel opined that he did not believe Richardson planned to make an offer because the winning bid was too high:

COUNSEL: Did [Richardson] ever say this offer was too high or out of line?

PATEL: He felt—yes, he did feel like—he was shocked at the offer.

COUNSEL: So based upon your conversation, is it—did you conclude that [Richardson] was not interested in spending more than $5.5 million on the Ojeman

5

|  | [P]roperty at this point in time in April of 2018? |
|---|---|
| PATEL: | Yeah, I was[ not] sure if he was going to go above that based on my conversations with what he told me, that he felt the renovation cost to this property was substantial and that he did[ not] know if the deal made sense for him at that price point. |

Regarding the fraudulent inducement claim, Roberts asserted in his summary judgment motion that this claim "[was] simply an effort to recast [Richardson's] breach of contract claim and is barred by the contorts doctrine, or economic loss rule." Finally, Roberts filed an affidavit and a time records summary of his attorney's fees and costs from the underlying litigation, totaling $70,400. Richardson did not object to this evidence.

The trial court granted Roberts's motion for summary judgment, dismissing Richardson's claims. The trial court also awarded Roberts his requested attorney's fees. Richardson then filed a motion for new trial, which the trial court denied. This appeal ensued.

## II.    MOTION FOR SUMMARY JUDGMENT

We review de novo a trial court's decision to grant summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). "Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002). In reviewing a grant of summary judgment, we must take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 646 (Tex. 2020).

6

A defendant moving for traditional summary judgment must establish that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019). "The defendant thus must conclusively disprove at least one element of each of the plaintiff's claims or conclusively prove each element of an affirmative defense." *Rollins v. Pressler*, 623 S.W.3d 918, 924–25 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (citing *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010)). "Proof is conclusive if reasonable people could not differ in their conclusions." *Id.* (citing *Helix Energy Sols. Grp. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017)).

If the defendant carries this burden, the burden then shifts to the plaintiff to provide evidence that raises a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. "In deciding whether a disputed issue of material fact precludes summary judgment in the defendant's favor, we credit evidence favorable to the plaintiff if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not." *Rollins*, 623 S.W.3d at 925; *see Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019). We indulge every reasonable inference and resolve all doubts in the plaintiff's favor. *Lujan*, 555 S.W.3d at 84.

### III.   BREACH OF CONTRACT

By his first issue, Richardson contends the trial court erred in granting summary judgment on his breach of contract claim because he raised genuine issues of material fact on each element. To prevail on a breach of contract claim, a party must establish the following elements: (1) that a valid contract existed between the plaintiff and the

defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the contract's terms; and (4) the plaintiff sustained damages as a result of the defendant's breach. *See Atrium Med. Ctr., LP v. Hous. Red C LLC*, 546 S.W.3d 305, 311 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 595 S.W.3d 188 (Tex. 2020). Here, the contract at issue is the parties' Rule 11 Agreement signed on January 22, 2018. "Litigants' Rule 11 agreements are contracts relating to litigation, and thus we construe them under the same rules as a contract." *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018) (per curiam).

Richardson argued that his evidence in response to Roberts's summary judgment motion "at least raised a fact issue with respect to his claim that [Roberts] sold the Ojeman Property without placing the property back on the market and allowing [Richardson] the opportunity to bid on the Ojeman Property for [forty-five] days." We agree. The Rule 11 Agreement set forth that the Ojeman Property would go "back onto the market for sale[.]" There is no date as to when this had to occur. Roberts testified via affidavit that he placed the property onto the market on January 22, 2018—the date of the Rule 11 Agreement. Richardson, however, claims that the property did not go onto the market until the date of the signed listing agreement with Patel, dated March 5, 2018. According to Richardson, this would mean he would have until April 20, 2018, or forty-five days, to submit a bid. However, Roberts signed a new purchase agreement with the third-party bidder on March 30, 2018.

Under our summary judgment standard of review, we must take as true all evidence favorable to Richardson as the non-movant. *See Bush*, 601 S.W.3d at 646. We

8

indulge every reasonable inference and resolve all doubts in Richardson's favor. *See Lujan*, 555 S.W.3d at 84. Here, assuming Patel placed the Ojeman Property on the market on March 5, 2018, the date of the listing agreement, Richardson should have had until April 20, 2018, to submit an offer. Therefore, when Roberts signed a new purchase contract on March 30, 2018, with the third-party bidder for $5.65 million dollars, Roberts breached the Rule 11 Agreement to keep the Ojeman Property on the market for forty-five days. We thus hold that Richardson raised a genuine issue of material fact on the element of breach.[3] *See Lujan*, 555 S.W.3d at 84. We sustain this issue.

## IV. FRAUDULENT INDUCEMENT

By his second issue, Richardson argues the trial court erred in granting summary judgment on his fraudulent inducement claim. He claims that Roberts made a material misrepresentation to Richardson when he "did not have an open bidding process for forty-five days, did not allow Richardson to bid on the [Ojeman] Property, and did not return Richardson's $170,000 earnest money upon entering into a contract with another buyer."

### A. The Elements

"Fraudulent inducement is a species of common-law fraud that arises only in the context of a contract." *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224,

---

[3] It is unclear from Roberts's motion for summary judgment whether he challenged damages as an element of Richardson's breach of contract claim. Although his motion stated that "Richardson received a full return of his earnest money [] ($170,000.00) as per the parties' Partial Settlement Agreement," there is no analysis challenging this element. "A motion for summary judgment must stand or fall on its own merits." *Haver v. Coats*, 491 S.W.3d 877, 881 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Brown v. Hearthwood II Owners Ass'n, Inc.*, 201 S.W.3d 153, 159 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)). "A reviewing court cannot read between the lines or infer from the pleadings or evidence any grounds for summary judgment other than those expressly set forth in the motion." *Id.* (citing *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (per curiam).

228 (Tex. 2019) (cleaned up) (quoting *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018)). "[A] fraudulent inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury." *Id.* "In a fraudulent inducement claim, the misrepresentation occurs when the defendant falsely promises to perform a future act while having no present intent to perform it." *Id.* (cleaned up). "The plaintiff's 'reliance' on the false promise 'induces' the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise." *Id.*

## B.  The Economic Loss Rule

Roberts argues that Richardson's fraudulent inducement claim "is simply an effort to recast his breach of contract claim" and that this act is barred by the economic loss rule. The economic loss rule precludes recovery in tort for damages "resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991)). "Its focus is on determining whether the injury is to the subject of the contract itself." *Id.* "In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Id.* at 12–13.

In response, Richardson notes that Texas's high court has addressed this issue. "The Texas Supreme Court has carved out an exception to the economic loss rule for fraudulent inducement claims, reasoning that an independent legal duty exists not to fraudulently procure a contract." *W. Loop Hosp., LLC v. Hous. Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 487 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 46 (Tex. 1998)). "A fraudulent inducement plaintiff is not required to establish an injury independent from damages under the contract." *Id.* (citing *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 798 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (noting that exception to economic loss rule in *Formosa Plastics* for fraudulent inducement claims created was "very limited")). "Instead, if the plaintiff can present legally sufficient evidence of all elements of a fraudulent inducement claim, the plaintiff's damages sound in tort, not contract." *Id.* (quoting *Formosa Plastics*, 960 S.W.2d at 47).

In light of the foregoing caselaw, we agree with Richardson that his fraudulent inducement claim was not barred by the economic loss rule in this case. *See Formosa Plastics*, 960 S.W.2d at 46; *W. Loop Hosp., LLC*, 649 S.W.3d at 487. We sustain this issue.

## V.    ATTORNEY'S FEES

By his third and final issue, Richardson contends that the trial court erred in awarding Roberts $70,400 in attorney's fees under the UDJA.[4]

---

[4] The parties appear to acknowledge that Roberts could not be awarded attorney's fees under Texas Civil Practice & Remedies Code § 38.001, which allows the recovery of fees for "an oral or written contract," because one must recover damages to be awarded fees under this statute. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(b)(8); *see Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Roberts

Texas follows the "American Rule" regarding attorney's fees, prohibiting fee awards unless they are specifically provided by contract or statute. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009). To secure an award of attorney's fees, the prevailing party must prove that: "(1) recovery of attorney's fees is legally authorized, and (2) the requested attorney's fees are reasonable and necessary for the legal representation, so that such an award will compensate the prevailing party generally for its losses resulting from the litigation process." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019).

The UDJA provides that, "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. An award of attorneys' fees under the UDJA is permissive, not mandatory, and "[t]he trial judge has discretion to award such fees." *Justice Bail Bonds v. Samaniego*, 68 S.W.3d 811, 815 (Tex. App.—El Paso 2001, pet. denied). We review a trial court's award of attorney's fees under an abuse of discretion standard. *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 270 (Tex. 2021). A court abuses its discretion if it rules without reference to guiding rules or principles. *Id.*

Richardson contends that Roberts's attorney's fees are improper under the UDJA as he argues that Roberts filed the declaratory action solely to negate Richardson's pleadings, which is an impermissible tacking of a claim. *See MBM Fin. Corp.*, 292 S.W.3d at 669 (holding that a party cannot use the UDJA "as a vehicle to obtain otherwise

---

did not "recover damages" when the trial court awarded his motion for summary judgment on Richardson's breach of contract claim. *See Green Int'l, Inc.*, 951 S.W.2d at 390. Therefore, he could not seek attorney's fees under this statute. *See id.*

impermissible attorney's fees"). Allowing parties to replead any claim or defense as a request for declaratory relief undermines the American Rule prohibiting attorney's fees in cases where they are not specifically allowed by statute or contract. *See id.*

Reviewing the counterclaim, we note that while some of Roberts's requests were related to Richardson's breach of contract claim, Roberts did request some relief beyond the scope of that claim. For example, this language is from Roberts's fourth amended counterclaim:

> Roberts seeks declaratory judgment declaring the lis pendens filed by Richardson void and that the Court award Roberts damages for the loss of his opportunity to sell the property to a third party and for his lost profits arising from the sale, if any, at the time of judgment.

However, the trial court's final judgment sets forth that, "[t]he Court hereby enters a declaratory judgment that [Roberts] did not breach the parties' Settlement Agreement dated January 22, 2018." Because the trial court's declaratory judgment relief specifically relates to the parties' Rule 11 Agreement, and because we have held that there exists a fact issue regarding the performance of this contract, we conclude the trial court abused its discretion when it awarded these fees on this matter. *See Allstate Ins. Co.*, 627 S.W.3d at 270. We sustain this issue.

## VI.    CONCLUSION

We reverse and remand for proceedings consistent with this opinion.

LETICIA HINOJOSA
Justice

Delivered and filed on the
29th day of December, 2022.

13